THE PEOPLE *ex rel.* EDWARD L. PACZKOWSKI, Plaintiff-Appellant, *v.* JAMES B. CONLISK, JR., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 59071

Opinion filed February 26, 1976.—Modified upon denial of rehearing May 18, 1976.

Richard F. McPartlin, of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court as modified upon denial of petition for rehearing:

Relator, Edward L. Paczkowski (hereinafter, for convenience, plaintiff), brought this action seeking the issuance of a writ of mandamus against James B. Conlisk, Jr., superintendent of the Chicago Police Department (hereinafter the Superintendent), the Civil Service Commission of the City of Chicago (hereinafter the Commission), the comptroller of the City of Chicago, and the treasurer of the City of Chicago. Plaintiff alleges that he was wrongfully discharged from the Chicago Police Department, and thereby was prevented from performing his duties and was deprived of his salary, seniority, and other employee benefits. Plaintiff asked the Circuit Court of Cook County to order his reinstatement with full back salary and benefits.

The facts on which plaintiff's complaint is based are as follows: Plaintiff, having previously passed the appropriate civil service examination, was certified and appointed as a patrolman on the Chicago Police Department on 22 February 1971. This appointment was subject to a nine-month probation period under section 10—1—14 of the Illinois Municipal Code as implemented by rule IV, section 5 of the Rules of the Commission. (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—14.) On 16 November 1971, while still serving his probationary period, plaintiff was suspended by order of the Superintendent for a minimum of 30 days, pending approval and disposition by the Commission of the Superintendent's request for authority to discharge plaintiff from the Police Department. Pursuant to rule IV, section 5 of the Rules of the Commission, such a request was duly made by the Superintendent to the Commission on 15 December 1971 (the 29th day of plaintiff's suspension). On 27 December 1971, the Commission advised the Superintendent that authority to discharge plaintiff from the Chicago Police Department had been granted by the Commission on 22 December 1971. On 11 April 1972, the Superintendent issued a personnel order discharging plaintiff from the Police Department "effective" as of 15 December 1971.

The trial court, in dismissing plaintiff's mandamus proceeding, made certain finding of fact and conclusions of law which we paraphrase as follows:

(1) The court had jurisdiction over the persons and the subject matter involved;

(2) The plaintiff was a probationary patrolman at the time of his suspension;

(3) The running of the probation period is tolled by a lawful suspension;

(4) A probationary patrolman is not in the classified Civil Service until the probationary period has been completed;

(5) Since the Superintendent's authority to suspend a probationary patrolman is not restricted to any fixed maximum period of time, the plaintiff's suspension was lawful and tolled the plaintiff's probationary period;

(6) Since the plaintiff was still in a probationary status on the date of his discharge, the discharge was lawful.

OPINION

The ultimate issue presented for our review is whether plaintiff was still a probationary patrolman at the time of his actual discharge on 11 April 1972. Section 10—1—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—14) in pertinent part provides:

"At or before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of the commission, discharge him upon assigning in writing his reason therefor to the commission. If he is not then discharged [*i.e.*, discharged at or before the expiration of the period of probation], his appointment shall be deemed complete."

If plaintiff's probation period had been fully served before his discharge, thereby completing his appointment, he would be protected by the following pertinent provisions of section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.1):

"In any municipality of more than 500,000 population, no officer or employee of the police department in the classified civil service of the municipality whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity to be heard in his own defense by the Police Board. * * *

Upon the filing of charges for which removal or discharge, or suspension of more than 30 days is recommended a hearing before the Police Board shall be held.

* * *

Nothing in this Section limits the power of the superintendent to suspend a subordinate for a reasonable period, not exceeding 30 days."

Plaintiff's contention is that his minimum 30-day suspension ended on 16 December 1971; that the final sentence in section 10—1—18.1 (quoted just above) operates to limit the authority of the Superintendent to suspend a subordinate, without the filing of written charges and a hearing thereon before the Police Board, to a maximum period of 30 days only; that the said final sentence made it unlawful for his suspension to continue beyond 16 December 1971, absent the filing of written charges with, and a hearing thereon by, the Police Board, neither of which events had occurred; that, therefore, his suspension had terminated on 16 December 1971, whereupon his probation period (which had been tolled for the said 30 days) resumed its running with five days yet to be served; and that, therefore, his probation period was fully served on 21 December 1971, whereupon his appointment in the classified Civil Service became complete, with the result that, when he was in fact discharged on 11 April 1972, he was a member of the Chicago Police Department who could not be discharged except upon the filing of written charges and after an opportunity to be heard in his own defense at a hearing held before the Police Board, neither of which events had occurred.

It is obvious that plaintiff's contention depends wholly on the accuracy of his subcontention that the 30-day limitation in the final sentence of section 10—1—18.1 on the Superintendent's power of summary suspension is applicable to him because he was a subordinate of the Superintendent.

Defendants on the other hand contend that the said limitation is applicable only to police officers "in the classified Civil Service whose appointment has become complete"; that, therefore, the said limitation is not applicable to plaintiff because, owing to his probationary status on 16 November 1971 (the date of his suspension), his appointment in the classified Civil Service had not then become complete, with the result that he was still on probationary status on 11 April 1972 (the actual date of his discharge), for which reason his discharge was lawful and valid.

Before considering the pertinent case law, we will examine the language of the pertinent portions of section 10—1—18.1 quoted above. The final sentence acknowledges the power of the Superintendent summarily to suspend a subordinate for a reasonable period of time, and fixes the maximum duration of such reasonable period of time as being 30 days. The inference is that the Superintendent has no power of summary suspension of a subordinate for a period of time in excess of 30 days. This inference is confirmed by the preceding portions of the same paragraph which provide for certain procedural rights for subordinates whom the

Superintendent suspends for "more than 30 days" (or whom he at any time removes or discharges), namely, the filing of written charges with the Police Board and the opportunity for the subordinate to be heard in his own defense at a hearing before the Police Board.

■■■ But who are the "subordinates" with whom section 10—1—18.1 is dealing? They are officers or employees of the Police Department in municipalities of more than 500,000 population (hence, the City of Chicago) whose appointment in the classified Civil Service "has become complete." From the provisions of section 10—1—14 (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—14), we know that an original appointment in the classified Civil Service to the Police Department of municipalities with a population of more than 500,000 shall be on probation for a period not to exceed nine months, the specific period within the limitation to be fixed by the rules of the department.[1] In addition, from the pertinent portion of section 10—1—14 quoted above in this opinion, we know that, if the probationary patrolman is not discharged at or before the expiration of the probation period, "his appointment shall be deemed complete." Hence, section 10—1—18.1 is dealing with "subordinates" of the Chicago Police Superintendent who have completed their probation period without having been discharged. While plaintiff in the instant case is concededly a subordinate of the Superintendent, he was not at the time of his suspension in the class of subordinates with whose suspension section 10—1—18.1 deals, because he was then concededly a probationary patrolman. Hence, the 30-day limitation on the power of the Superintendent to suspend subordinates summarily is applicable only to such subordinates as have served out their probation period without having been discharged. The limitation, therefore, is inapplicable to plaintiff who, at the date of his suspension, had not fully served out his probation period.

■■ Nothing in section 10—1—18.1 prohibits the Superintendent from suspending probationary subordinates for lengthy periods of time. *Blake v. Lindblom* (1907), 225 Ill. 555, 80 N.E. 252, did not reach this issue, since the suspension of the probationer in that case was for less than 30 days. The court merely held that a lawful suspension tolls the running of the probation period. We adhere to that holding in the present case.

■■ We need not and do not conclude that the power of the Superintendent summarily to suspend a probationary subordinate has no durational limit. We do not even conclude that the Superintendent has power summarily to suspend a probationary subordinate for a period in

---

[1] Plaintiff's brief quotes the applicable departmental rule in the instant case as being rule IV, section 5 of the Rules of the Chicago Civil Service Commission, which in perinent part reads as follows: "Appointments to the position of Patrolman shall be on probation for a period of nine months. ° ° °"

excess of 30 days as an independent disciplinary measure of his own. Those issues are not before us for review. We conclude, from a close examination of the language of section 10—1—18.1, merely that the 30-day limitation therein on the power of the Superintendent summarily to suspend a subordinate is inapplicable to a probationary subordinate, and that the Superintendent has the power summarily to suspend a probationary subordinate for a period in excess of 30 days without a Police Board hearing on written charges where the Superintendent does so pending his request to the Commission for approval of his decision summarily to discharge the said probationary subordinate for a reason given to the Commission and where his request for such approval is then made within the 30-day minimum period of suspension and the Commission thereafter approves.

■■ We turn now to examine relevant Illinois case decisions. As to relevancy, the recent decision in *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, found that the various statutory provisions relating to the removal and suspension of persons in the classified civil service were provisions *in pari materia,* so that decisions based on any one of such provisions were applicable to other such provisions.

Specifically, two such provisions *in pari materia* are sections 10—1—18.1 and 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, pars. 10—1—18.1 and 10—2.1—17). In the recent case of *Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 338 N.E.2d 397, the Supreme Court held that the procedural protection afforded by section 10—2.1—17 as to discharges of police officers applied only to police officers who had completed their probationary period and did not extend to probationary officers; hence, a probationary police officer could be lawfully summarily discharged. It follows that the procedural protection afforded by section 10—1—18.1 as to the *discharge* of police officers applies only to police officers who have completed their probationary period and does not extend to probationary police officers; such probationary officers may be lawfully summarily discharged by the Superintendent with the approval of the Commission. Since this is so as to the most severe matter of discharge, it must be so *a fortiori* as to the lesser matter of suspension for more than 30 days *pending* the Commission's approval of the Superintendent's decision to discharge for a reason given to the Commission, which approval is sought within the minimum 30-day period and is thereafter granted.

In their brief, defendants rely on the following language in *People ex rel. Shelton v. City of Chicago* (1973), 13 Ill. App. 3d 729, 732, 301 N.E.2d 162, 164:

> "It is apparent from the statute that the rule concerning suspensions of more than 30 days is applicable only to employees 'in the

> classified civil service.' Moreover, our supreme court has held that an employee is not 'in' the classified civil service until the probationary period has expired. *Fish v. McGann,* 205 Ill. 179, 183, 68 N.E. 761, 763."

We think, however, that the decision in *Shelton* did not turn on the quoted language and that *Shelton* is distinguishable on its facts from the instant case.

Defendants' contention is, however, supported by the subsequent case of *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1. In that case, the issue reviewed under the relevant provisions of section 10—1—18.1 (Ill. Rev. Stat. 1969, ch. 24, par. 10—1—18.1) (which provisions are identical with the relevant provisions in the instant case) was "whether the Superintendent of Police of the City of Chicago may suspend an officer for a period of more than 30 days without pay pending his dismissal from the Department * * *." There is nothing in the opinion to indicate that the officer was a probationary officer; it must be assumed that he was not. On 17 August 1971, he was indefinitely suspended by the Superintendent pending a hearing and disposition of charges. Written charges were furnished to him and the Police Board hearing thereon was held on 2 December 1971 (about 3½ months later). On 15 March 1972, the full Police Board reviewed the transcript of the hearing, found the officer guilty as charged, and ordered his immediate discharge. On 20 March 1972, the officer was notified of his discharge. The officer then filed a mandamus proceeding to compel the payment to him of his salary for the period beginning 17 September 1971 and ending on 20 March 1972 for the reason that the Superintendent had no authority to suspend him for more than 30 days. This court held that he was not entitled to be paid for that period where he had received written charges and a hearing thereon and had then been discharged pursuant to a finding of guilty of the said charges. While the decision relates directly to the officer's right to pay for the period from 30 days after his indefinite suspension to the date on which he received notice of his discharge, it necessarily involved the issue of the Superintendent's power to suspend the officer for more than 30 days, and this court formulated the issue in those terms. It follows that, since a nonprobationary police officer can lawfully be suspended for more than 30 days pending disposition of charges where his procedural rights under section 10—1—18.1 were accorded him and where he was then discharged, the Superintendent *a fortiori* has power to suspend a probationary officer for more than 30 days pending his discharge for a reason for which the discharge is then approved by the Commission and effected; and the Superintendent may so suspend the probationary officer summarily, because the probationary officer, as held in *Romanik,* is not entitled to the procedural rights provided in section 10—1—18.1.

■■ In view of two other decisions directly relating to the right of nonprobationary officers to back pay, we suggest that the Superintendent's power to suspend for more than 30 days depends upon the disposition of the charges against the suspended officer. As to nonprobationary officers, where the charges are sustained and the officer is discharged (after having been afforded the specified procedural rights), the Superintendent has such power, as held in *Cotter*. But where the charges are not sustained or are dropped, then the Superintendent has no such power and the officer is entitled to back pay from the very date of his suspension for more than 30 days. *People ex rel. Petlock v. McDonough* (1971), 131 Ill. App. 2d 469, 268 N.E.2d 267; *People ex rel. Maxwell v. Conlisk* (1973), 16 Ill. App. 3d 563, 306 N.E.2d 640, *aff'd* (1975), 60 Ill. 2d 243, 326 N.E.2d 377.

■■ Since, therefore, in the instant case (where plaintiff was a probationary officer at the date of his suspension for more than 30 days) the Superintendent's request for approval of plaintiff's discharge was duly made within the minimum 30-day period of the suspension and was thereafter granted by the Commission and plaintiff was then discharged, we conclude that (1) the Superintendent did have the power to suspend for more than 30 days pending the Commission's approval, at the request of the Superintendent for a reason given to the Commission, of the Superintendent's decision to discharge the probationary officer, and that (2) the specified procedural rights are not required owing to plaintiff's probationary status at the date of his suspension. We so hold on the authority (for the first proposition) of *Cotter* and (for the second proposition) of *Romanik*.

Finally plaintiff calls our attention to the fact that on 27 December 1971, the Superintendent was advised that, on 22 December 1971, the Commission had approved his decision to discharge plaintiff, but that plaintiff was not in fact then discharged by the Superintendent until 11 April 1972, so that plaintiff's suspension continued for 106 days after the Superintendent had complete authority to discharge him. The alleged legal significance of this fact is not clear, but we assume that plaintiff is suggesting that, even though the Superintendent had the power to suspend him for more than 30 days pending approval and disposition of the Superintendent's request for authority to discharge plaintiff, the Superintendent's power to suspend was nevertheless limited to a reasonable period of time, and that the period of suspension in plaintiff's case was unreasonable. Presumably, plaintiff is then contending that, on the day on which the period of time became unreasonable, the Superintendent's power to suspend plaintiff ceased, plaintiff's probationary period resumed running, and 5 days thereafter his probationary period became fully served with the result that, when

plaintiff was actually discharged on 11 April 1972, he was then an officer in the classified Civil Service whose appointment had become complete and, as such, he was entitled to the procedural rights specified in section 10—1—18.1, which he did not receive.

We note that the Superintendent requested the Commission's approval on 15 December 1971, which was the 29th day of plaintiff's suspension. The Commission granted the approval seven days later and informed the Superintendent of its approval five days after that (with Christmas intervening), so that the period of suspension to that date was 41 days. This is clearly a reasonable time. What remained in order to effect plaintiff's discharge was a purely administrative act of the Superintendent which took an additional 106 days to be performed. But there is no showing of any kind that this additional number of days during which plaintiff remained suspended constituted an unreasonable period of time where plaintiff was then in fact discharged. Even assuming that the theory of plaintiff's presumed contention is tenable, absent such a showing, we cannot so hold.

For the foregoing reasons, the judgment of the lower court dismissing plaintiff's mandamus action is affirmed.

Judgment affirmed.

STAMOS, P. J., and JIGANTI, J.,[2] concur.

[2] Mr. Justice Leighton, who concurred in the original opinion of the court, resigned from the court effective at the close of business on 26 February 1976, to accept an appointment to the Federal District Court. For the purpose of considering the petition for rehearing, Mr. Justice Jiganti was assigned to replace Mr. Justice Leighton.