WILLIAM T. HOBAN, Plaintiff-Appellant, *v.* JAMES M. ROCHFORD, Superintendent of Police, City of Chicago, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 77-1521

Opinion filed June 14, 1979.

William T. Hoban, of Chicago, for appellant, *pro se.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, William T. Hoban, was discharged from his position as captain of police with the Chicago police department following a hearing before the defendant police board on charges relating to his alleged failure to live within the city of Chicago as required by the Chicago Municipal Code. (Municipal Code of Chicago, ch. 25, par. 30.) Plaintiff sought review under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), and the circuit court sustained the findings and decision of the police board. On appeal to this court plaintiff contends: (1) the decision of the police board was void because in the investigation by the police department certain statutory and administrative rules were violated; (2) the police board decision was void because plaintiff was suspended for more than 30 days before the hearing took place, in violation of Illinois statutory law (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.1), and the due process clauses of the Illinois and United States constitutions; (3) he was denied equal protection of the laws when he was discharged for violation of the residency requirement although the policy of the police department was to only issue 30-day suspensions for the first such violation. Plaintiff does not challenge the finding of the board that he was in violation of the residency requirement.

We affirm the judgment of the trial court which sustained the findings and decision of the police board of the city of Chicago.

Plaintiff was appointed to the Chicago police department on August 22, 1955, and was promoted to the rank of captain on September 16, 1970. On December 4, 1975, he was advised in writing that he was alleged to be in violation of chapter 25, section 30 of the Municipal Code of Chicago and rule 25 of the Chicago police department, each of which required him, as an officer of the police department and a classified civil service employee, to actually reside in Chicago. The written notice also advised plaintiff that any admissions he made during questioning could be used as the basis for charges seeking his removal and discharge. He was further advised that he had the right to counsel during the examination. Plaintiff signed a waiver of

this right to counsel. During the examination on December 4 plaintiff refused to answer questions concerning his alleged residence in Lincolnwood, Illinois, claiming the constitutional privilege against self-incrimination. On December 9, 1972, plaintiff was again advised in writing of the alleged violations already noted, along with the additional charge that he had made a false report claiming residence in Chicago, in violation of rule 14 of the department. Plaintiff again executed a written waiver of counsel. Once more plaintiff asserted his constitutional privilege against self-incrimination and refused to answer questions about his alleged residence outside of Chicago. During this examination he was ordered to answer these questions by a police commander. He was advised orally that refusal to answer would constitute a violation of unspecified rules and regulations of the Chicago police department and would serve as a basis for seeking his discharge. Plaintiff persisted in his refusal to answer the questions. Near the end of the examination he was orally advised that the questions asked "were not intended to be used as evidence in any criminal prosecution" against him. Plaintiff indicated that even with this knowledge he would persist in his refusal to answer.

By an order dated December 10, 1975, and effective that same day, the superintendent of police suspended plaintiff "for a minimum of thirty (30) days" for violation of rules 6, 14, 25 and 51B of the Chicago police department. The order also stated charges would be filed with the Chicago police board seeking his separation from the force or other such punishment as might be determined after a board hearing. The order noted that at the hearing the board would also review the original disciplinary action taken by the superintendent.

In a letter from the police board dated December 22, 1975, the superintendent was notified that a hearing officer had reviewed the suspension and determined it was warranted pending hearing of charges by the board. On December 24 plaintiff was notified in writing of charges filed against him before the board and of a hearing on those charges scheduled for January 6, 1976. Plaintiff was charged with violation of the following rules:

"Rule 2. Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department."

"Rule 6. Disobedience of an order or directive, whether written or oral."

"Rule 14. Making a false report, written or oral."

"Rule 25. Failure to actually reside within the corporate boundaries of the City of Chicago."

"Rule 51B. Failure to cooperate when called to give evidence or statements by any investigative branch or superior officer of the

Chicago Police Department or the Police Board when the evidence or statements sought relate specifically, directly and narrowly to the performance of his official duties. If the member properly asserts a constitutional privilege, he will be required to cooperate if advised that by law any evidence or statements given by him cannot be used against him in a subsequent criminal prosecution." (Rules and Regulations of the Police Department, City of Chicago, art. V, rules 2, 6, 14, 25, and 51B.)

According to the specifications included in the notice to plaintiff, the violations of rules 2 and 25 were founded directly upon his alleged failure to reside in Chicago. The violation of rule 14 was based on a "Residence Auto Licensing Data Card" submitted by the plaintiff in 1975 in which he indicated that he resided at a specified address in Chicago. Violation of rule 51B was based on his failure to cooperate and answer questions on December 4 and 9, 1975, concerning his residence. The violation of rule 6 was founded on his failure to obey his superior commander's order on December 9, 1975, to answer questions concerning his residence and his use of a department vehicle in November 1975. Following a hearing the board found, on April 12, 1976, that plaintiff had violated these rules in the manner specified in the charges and ordered that he be discharged from the police department.[1] The circuit court sustained these findings and the decision on August 1, 1977 and this appeal followed.

## I.

■■ Plaintiff contends that the action of the board was void because the police department's investigation and institution of charges was not in compliance with the procedures required by the department's own rules and by Illinois statute. However, our examination of the record establishes that the applicable procedures were followed. Plaintiff asserts that when the department notified him of his suspension they failed to inform him that he had a right to a review of the suspension by the police board and they also failed to include an express finding by the superintendent that the public safety or good of the department required his immediate suspension as required by the rules of procedure of the board. (Rules of Procedure of the Police Board, City of Chicago, article IV, §§A, C(1).) But these requirements do not apply to:

"* * * any suspension implemented by the superintendent of police which is accompanied by the filing of charges with the Police Board seeking a member's separation or suspension in excess of 30 days except that no later than seven days after service of the notice

---

[1] The board also found that plaintiff was entitled to "compensation for that period of time when he was first suspended and charges were filed with the Police Board." On appeal to this court neither party has contested the validity of that finding.

of suspension a member of the Police Board or its hearing officer shall review the order of the superintendent together with the reasons therefor and shall at that time determine whether suspension pending the disposition of charges is warranted." (Rules of Procedure, art. IV, §D.)

The superintendent's order suspending plaintiff stated that charges would be filed seeking his separation from the force. Those charges were filed by December 24, 1975. We find that these charges accompanied plaintiff's suspension order within the meaning of article IV, section D. The record further shows that on December 22, 1975, the superintendent was notified by the police board that they had reviewed the suspension order, as required by article IV, section D and approved the suspension pending the hearing of charges. That notice does not indicate on what date the review took place, but we must presume, in the absence of contrary evidence, that the board complied with the seven-day requirement. *Beam v. Erven* (1971), 133 Ill. App. 2d 193, 272 N.E.2d 685.

■■ ■ Section 10—1—18.1 of the Illinois Municipal Code provides in pertinent part:

"In any municipality of more than 500,000 population, no officer or employee of the police department in the classified civil service of the municipality whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity to be heard in his own defense by the Police Board. Before any such officer or employee may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination; * * *." (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.1.)

Plaintiff contends he was not properly notified of the charges against him and of his rights as required by this provision, but again the record establishes full compliance with these requirements. Contrary to plaintiff's assertion, he was advised in writing of his right to counsel and that his statements could be used as the basis for seeking his removal or discharge. Plaintiff signed a written waiver form, acknowledging that he had read and

understood these warnings. Plaintiff was also notified in writing of the specific illegal or improper acts he was alleged to have committed, failure to reside within the city and filing a false report concerning his residence. These actions were the foundation for the charges that he violated rules 2, 14, and 25 of the department. The failure to specifically mention rule 2 in the written notice prior to interrogation was not significant because plaintiff was advised of the underlying act he allegedly committed in violation thereof. Nor do we find any procedural error in the failure to advise plaintiff in writing that refusal to answer the questions about his residence even when ordered to do so would constitute violations of rules 6 and 51B. Plaintiff was not questioned about these violations during his examinations, rather, they arose out of that questioning. Furthermore, plaintiff was orally advised that his refusal to answer would be the basis of charges against him.

█ █ Finally plaintiff asserts that rule 51B was violated because it required that he be advised that statements he made could not be used against him in a subsequent criminal proceeding. But this portion of the rule only applies to a *proper* assertion of a constitutional privilege. Plaintiff attempted to assert the privilege against self-incrimination contained in the fifth amendment to the United States Constitution. That privilege applies to criminal and civil proceedings, formal and informal, whenever an answer might tend to subject to criminal responsibility the person giving the answer. (*Lefkowitz v. Turley* (1973), 414 U.S. 70, 38 L. Ed. 2d 274, 94 S. Ct. 316; *McCarthy v. Arndstein* (1924), 266 U.S. 34, 69 L. Ed. 158, 45 S. Ct. 16.) It also extends to instances where forfeitures and penalities may arise from criminal offenses. (*United States v. United States Coin & Currency* (1971), 401 U.S. 715, 28 L. Ed. 2d 434, 91 S. Ct. 1041; *Boyd v. United States* (1886), 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524.) And it has been held to apply to municipal ordinance violations where a fine may be imposed. (*City of Chicago v. Lord* (1954), 3 Ill. App. 3d 410, 122 N.E.2d 439, *aff'd* (1955), 7 Ill. 2d 379, 130 N.E.2d 504.) But the underlying activity about which plaintiff was questioned concerned his residence outside Chicago. Although this was in violation of a Chicago ordinance, that ordinance only establishes residence as a condition of employment. (Municipal Code of Chicago, ch. 25, par. 30.) Violation of the ordinance may result at most in discharge from employment, a remedial sanction which does not invoke the protection of the privilege against self-incrimination. (*Application of Delehanty* (1952), 202 Misc. 40, 115 N.Y.S.2d 610, *aff'd* (1952), 280 App. Div. 542, 115 N.Y.S.2d 614, *aff'd* (1952), 304 N.Y. 725, 727, 108 N.E.2d 46; *Pfitzinger v. United States Civil Service Com.* (D. N.J. 1951), 96 F. Supp. 1, *aff'd* (3d Cir. 1951), 192 F.2d 934; see generally *In re March* (1978), 71 Ill. 2d 382, 376 N.E.2d 213.) And plaintiff does not contend, nor do we find, that the

questioning raised a possibility of any subsequent criminal action against him. Accordingly plaintiff could not properly assert the privilege and the warnings of rule 51B were not required.

## II.

Plaintiff's second contention is that his suspension was for more than 30 days and thus should have been preceded by a hearing on the charges. We agree that the suspension "for a minimum of 30 days" which continued until charges were heard was for more than 30 days. (*People ex rel. Maxwell v. Conlisk* (1975), 60 Ill. 2d 243, 326 N.E.2d 377.) But we do not agree that section 10—1—18.1 required a hearing before the initial suspension. In *Kropel v. Conlisk* (1975), 60 2d 17, 322 N.E.2d 793, relied on by plaintiff, a suspension for 30 days under section 10—1—18.1 was at issue. The supreme court construed the statute to require review of such suspensions if requested by the employee. In dicta the court indicated that a suspension for more than 30 days "requires a hearing before the sentence can be imposed." (60 Ill. 2d 17, 26, 322 N.E.2d 793, 798.) But in the context of the entire opinion, we believe the court was referring to the ultimate sentence imposed which would remain on the employee's record. The court found implicit requirements in section 10—1—18.1 and its companion statute, section 10—1—18 (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18), that when disciplinary acts were found on review to be unwarranted the employee should be paid his back wages and his work record should be cleared of the unestablished charges. If the review indicated the action taken was proper then, of course, the suspension or discharge would be final and would remain on the employee's record. Under *Kropel* this review is mandated before such final action is taken where a suspension of more than 30 days is involved; for suspensions of less than 30 days the employee must request a hearing before one is required.

Our construction of the statute is supported by our decision in *People ex rel. Cotter v. Conlisk* (1974), 17 Ill. App. 3d 346, 308 N.E.2d 1. There a Chicago policeman was indefinitely suspended pending a hearing and disposal of charges against him. Ultimately the officer was discharged and he sought payment of his salary for the period beginning 30 days after his suspension and ending when he was notified of his discharge following a hearing. The officer contended that under section 10—1—18.1 he could not be suspended without pay for more than 30 days while awaiting disposition of the charges against him. We held:

> "Such an interpretation could not have been intended by the Legis-
> lature. To do so would require the police department to either
> continue someone on the job who was of doubtful character or com-
> petence, or suspend the man and continue paying him for not

working. In the case of *Clark v. Morris* (1968), 99 Ill. App. 2d 24, 31, [240 N.E.2d 515,] the court stated:

> '* * * it would be incongruous to conclude that the Legislature would provide a form of discipline which would propel this Court into conferring that which many individuals might deem a happy boon and a favor, i.e., pay without work. The status of being "without pay" is an incident of suspension.'

Similarly, it would be incongruous in the instant case for a police officer under charges for taking advantage of his office to be paid while waiting to be officially discharged.

> The statute provides for procedural protection against arbitrary action by the Superintendent in the form of a hearing and review by the police board; it does not mandate the payment of salary to one who is under charges with a recommendation of dismissal.

> If the police board finds a dismissal is unwarranted, then an officer is entitled to back pay because he was wrongfully deprived of his right to work. But one whose dismissal is affirmed by the police board can have no such claim." (17 Ill. App. 3d 346, 347-48, 308 N.E.2d 1, 2.)

In this cause we find no violation of the statute where plaintiff was suspended for more than 30 days and given a full procedural hearing before his suspension was finally approved and he was discharged. See *People ex rel. Paczkowski v. Conlisk* (1976), 38 Ill. App. 3d 106, 347 N.E.2d 96.

Nor do we find that this procedure violated plaintiff's due process rights. Ordinarily the opportunity for "some kind of hearing" would be required prior to the deprivation of a significant property interest. (*Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554; see Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267-1317 (1975).) And defendants do not contest that the suspension in this cause constituted deprivation of a significant property interest. (*Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793; see *Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166.) But finding the specific requirements of due process in a particular case has been held by the United States Supreme Court to require consideration of three distinct factors:

> "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." (*Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.) And the procedures required need not include a prior hearing "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination * * *." (*Memphis Light*, 436 U.S. 1, 19, 56 L. Ed. 2d 30, 45, 98 S. Ct. 1554, 1565; see *Mathews v. Eldridge*.) The private interest involved here is the temporary suspension of the plaintiff from his civil service position pending final adjudication of charges against him. As we have noted, under *Kropel* it is implicit in the statute that any disciplinary action found on review to have been inappropriate should be corrected with monetary recompense and modification of the employee's records. Thus, there is no potential for a severe loss or permanent deprivation arising from the lack of a prior hearing; the potential loss to plaintiff is unlike that in *Memphis Light* where the deprivation of utility services was described by the court as "uniquely final." The procedures utilized here also served to minimize the potential for error inherent in the lack of a full evidentiary hearing. Before any action was taken against the plaintiff he was notified in writing of the basic charge against him, failing to reside in Chicago. He was given an opportunity to counter these charges or explain his actions when he was questioned about them by department personnel, and he could then have been assisted by counsel had he so chosen. The initial suspension which followed his failure to satisfactorily answer the charges was subject to a prompt review within seven days by the board and that in turn was followed by the full evidentiary hearing we have described. That hearing was commenced within 50 days of plaintiff's suspension, and he has not alleged any prejudice arising from a delay of such a limited duration. On the other hand, adoption of the procedures urged by him would require the department to maintain on the force a man suspected of violating rules which it was his duty to enforce. Plaintiff conceded at the hearing that in his capacity as legal review officer with the internal affairs division of the department he reviewed investigations dealing with the residency requirement and made recommendations as to whether those cases should go forward. He thus had an integral role in the enforcement of the ordinance. To require the department to continue to employ him in this capacity pending final review of the charges would be unreasonable. Under the circumstances of this case we determine that the governmental interest in temporarily removing plaintiff from active duty pending final determination of the charges was justified where the relative injury to plaintiff was small and subject to correction and where the procedures actually utilized minimized the potential for error.

Accordingly, we find no due process violation in the procedures utilized. See *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633.

## III.

■■ We find no merit in plaintiff's claim that his termination violated his right to equal protection of the laws. Plaintiff introduced evidence at his hearing tending to establish that the general policy of the department had been to merely suspend for 30 days those found to be in violation of the residency requirement. But plaintiff's violation was not an ordinary case. He was an attorney whose job with the department included enforcement of the residency requirement. Thus he failed to demonstrate that others *similarly situated* were given lesser penalties. (See *United States v. Berrios* (2d Cir. 1974), 501 F.2d 1207.) Nor do we find any support for plaintiff's contention, made for the first time to this court in his reply brief, that he was more severely penalized because he asserted his privilege against self-incrimination. As we have noted the privilege was inapplicable. Furthermore, it is clear from the record that the underlying basis for his suspension and discharge was his failure to comply with the residency requirement. The other charges arose out of that violation and were subsidiary to it.

For the reasons set forth in this opinion the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.