Sal D'ACQUISTO, Tony Deseno, Patrick Vivirito and Richard Filas, individually and on behalf of all those similarly situated, Plaintiffs,

v.

Harold WASHINGTON, Mayor of the City of Chicago, the City of Chicago, a Municipal Corporation, Fred Rice, Superintendent of the Chicago Police Department, and the Police Board of the City of Chicago, Defendants.

Ronald J. GREEN, Plaintiff,

v.

The CITY OF CHICAGO, a municipal corporation, the Chicago Police Department, and Fred Rice, as Superintendent of Police, Defendants.

Nos. 85 C 1101, 85 C 1296.

United States District Court, N.D. Illinois, E.D.

June 16, 1986.

598

Michael J. Madden, Thomas G. Draths, Thomas J. Pleines, Joseph V. Roddy, Law Offices of Joseph V. Roddy, Chicago, Ill., for plaintiffs D'Acquisto, Deseno, Vivirito, and Filas.

David M. Mattenson, Kanter & Mattenson, Ltd., Chicago, Ill., for plaintiff Green.

James J. Convery, David Cassorla, Patricia M. Carroll, Asst. Corp. Counsels, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

These consolidated cases challenge the constitutionality of the suspension procedures used when Chicago police officers are accused of offenses which make them subject both to criminal charges and to internal department charges which could lead to their termination. Plaintiffs D'Acquisto, Deseno, Vivirito and Filas have filed a putative class action suit on behalf of themselves and other officers who are suspended without pay or benefits while awaiting a formal hearing before the Chicago Police Board on whether or not they will be discharged. Plaintiff Green brings an individual action on the same general grounds.

Currently before this court are plaintiffs' motions for preliminary injunctions and defendants' motions to dismiss for failure to state a claim.

The parties have generated a small mountain of paper and raised a basketful of legal issues. The problem of what process is due when a public employee is suspended is a frequently recurring one both here and elsewhere.[1] This court therefore thinks it worthwhile to go into these issues in some detail, in the hopes of limiting and focusing both the current and future litigations. We will deny a preliminary injunction and dismiss those claims which are grounded on equal protection, vagueness and *ex parte* communication theories. However, we find that the suspension procedures may unconstitutionally deprive plaintiffs of property and liberty without due process of law and may unconstitutionally burden their privilege against self-incrimination. We will deny the motion to dismiss as it relates to those claims.

### FACTS

Plaintiffs D'Acquisto, Deseno and Green were indicted on charges of accepting bribes in return for altering the course of investigations of hit and run accidents. Immediately upon their indictment defendant Rice, Chicago's Superintendent of Police, suspended them from active duty without pay and filed departmental charges seeking their removal from the force. Plaintiffs Vivirito and Filas are accused of taking $20 from a driver in lieu of issuing a traffic citation. They also submit the case of Officer Thomas McGrath, who is similarly accused. When interrogated by the Police Department's Internal Affairs Division, all three declined to give statements until assured by the State's Attorney's office that they would not be prosecuted. They were suspended, with departmental charges filed, for disobeying an order to speak and failure to cooperate with an investigation.

The Chicago Police Board has promulgated procedures for the suspension or discharge of a police officer pursuant to its authority granted by Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1. These procedures contemplate four distinct situations: suspension, emergency suspension, the filing of departmental charges with the Police Board which could lead to long term suspension or discharge, and emergency suspension plus the filing of departmental charges. It is the procedures applicable to the last of these situations which plaintiffs challenge.

In all cases, initiating formal discipline of an officer is within the discretion of the superintendent, who issues an appropriate order. A mere suspension cannot be implemented, however, unless either the officer consents to it or the Police Board has reviewed and approved it. If the superintendent finds "that the public safety, or the good of the Department or both" require it (rule IV–C), he may order an emergency suspension. An emergency suspension can be implemented immediately, but it must receive preliminary review within seven

---

1. Indeed, more than one set of suspended officers has prosecuted this class action suit, which makes the procedural posture of these actions a bit bewildering. The complaint in 85 C 1101 was filed on February 5, 1985, with D'Acquisto and Deseno as two of the three named plaintiffs (a third, John Novack, removed himself as a party shortly after filing). Green's complaint, 85 C 1296, was filed six days later. Both cases were vigorously prosecuted until roughly May 1985. This court was unable to rule on the various motions at that time. Then on March 19, 1986, additional filings appeared for 85 C 1101, but with Vivirito and Filas as named plaintiffs. These materials provided no information on the current status of D'Acquisto and Deseno.

Vivirito and Filas have never formally moved to intervene. However, the City has responded to these filings without challenging their failure to so move. Had Vivirito and Filas formally moved to intervene, this court would certainly have granted the motion. A class had not yet been certified, the named plaintiffs had perhaps lost interest in the suit, Vivirito and Filas are within the scope of the contemplated class, and their own situations involved identical questions of fact and law while also raising a new issue. *See* Fed.R.Civ.P. 23(d) and 24. The cases ask for the local application of important constitutional principles. Under the circumstances it seems appropriate to proceed, treating all four officers as named plaintiffs, and to rule on all the motions in both cases.

days by the hearing officer or a member of the Police Board, and be reviewed by the full Board within 30 days. If departmental charges are filed, but the officer remains on duty, a hearing before the Board on those charges must be set for within five to 30 days after the charges are served on the officer. An officer cannot be suspended for more than 30 days unless the suspension is accompanied by the filing of charges.

However, rule IV–D of the procedures expressly states that none of the above protections apply when an officer is both suspended and charged. The officer is suspended without pay or benefits on the superintendent's order, effective immediately. The suspension runs for no set time, merely "pending the disposition of charges." A hearing officer or member of the Board must review the order within seven days, but the suspended officer has no right to either appear at or file a statement for that review. The suspension is not reviewed independently, but rather at the same time the charges are reviewed. Eventually, the officer does receive a full evidentiary hearing before the Board, with the right to be heard, to be represented by counsel, to call witnesses, to cross-examine other witnesses, and to make arguments. However, there is no set time for the hearing, and since both sides have rights of discovery and to request continuances the hearings rarely occur promptly.[2] Defendants argue in their briefs that they can supply evidence showing that the average delay is four to five months; plaintiffs, however, cite individual cases where officers were suspended allegedly for up to two years awaiting hearings.

The procedures do not state whether or not an officer facing investigation has a right to remain silent. According to the allegations of plaintiffs Vivirito and Filas, until recently superior officers did not order officers facing possible criminal charges to give statements until the appropriate prosecuting authority had stated in writing that he declined to prosecute. This practice, they allege, has been memorialized in both the policy directives for investigators of the Internal Affairs Division and in part in the collective bargaining agreement between the City and the Fraternal Order of Police. However, the current approach apparently is that the Department, once it has assured the officer that it will not seek criminal prosecution, expects cooperation with internal investigations, whether or not the prosecuting authority has reached a decision. Officers who do not cooperate are suspended at once. These plaintiffs further allege that Superintendent Rice is attempting to persuade the Police Board of the correctness of this approach through what they describe as *ex parte* communications.

Officer McGrath's case has an additional twist. He passed the Illinois bar examination in February 1986. Others who passed on that date have been sworn in as attorneys, but he has not; the Committee on Character and Fitness of the Illinois Supreme Court has so far declined to approve his application. McGrath knows of no other blot on his character and believes that the suspension is keeping him from becoming a licensed attorney.

## DISCUSSION

The plaintiffs in both of these cases bring their actions under 42 U.S.C. § 1983.

---

**2.** A literal reading of Board procedures would indicate that some hearing is due within 30 days of the service of charges. The relevant passage, rule IV–D, reads:

> The procedures contained in Article IV do not apply to any suspension implemented by the Superintendent of Police which is accompanied by the filing of charges with the Police Board. . . .

The rule thus does not disclaim the procedures contained in Article I; and rule I–E, governing the filing of charges, requires an initial hearing before the Board "which in no event shall occur less than five (5) days nor more than thirty (30) days after the respondent is personally served with the charges." It is obvious from the materials submitted by all parties, however, that in practice neither the Board nor individual officers have construed rule I–E as putting a maximum time limit on the delay between suspension and hearing when an officer is suspended under rule IV–D (nor would it necessarily, since the timing is keyed to formal service of charges on the officer, not suspension).

Taken together, these plaintiffs argue that the existing Chicago Police Department practices and procedures when officers are suspended with departmental charges filed against them infringe upon the officer's rights under the United States Constitution in some five different ways, and also violate Illinois law.

## I. Nature of the Claims

### A. The Arguments

Specifically, the class action plaintiffs assert that: (1) a suspension for more than 30 days under rule IV–D without a meaningful opportunity for a hearing deprives the suspended officer of property without due process; (2) since the suspension goes into the officer's personnel records, the stigma which attaches also deprives the officer of a liberty interest; (3) requiring officers to give statements to internal investigators while criminal charges are still possible infringes their Fifth Amendment right against self-incrimination. They also claim that under Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1 an officer cannot be suspended for more than 30 days without a hearing. They seek: (1) a declaratory judgment that rule IV–D of the Police Board procedures violates both the federal Constitution and the state statute; (2) backpay and benefits retroactive to the dates of their suspensions; and (3) both preliminary and permanent injunctions which would (a) reinstate them either to duty or to the status of suspension with full pay and benefits, pending their hearings, (b) prohibit any suspensions over 30 days in the future without a full evidentiary hearing, (c) prohibit any attempt to evade the above restriction by using consecutive 30–day suspensions, and (d) prohibit any *ex parte* communications between Superintendent Rice and the Police Board.

Plaintiff Green complains that suspensions under rule IV–C "for the good of the Department" are suspensions on an unconstitutionally vague standard, and that the arbitrary and capricious way in which the suspensions are meted out deprives suspended officers of the equal protection of the law. He seeks immediate reinstatement, backpay and benefits, a declaratory judgment that rule IV–C is unconstitutional, preliminary and permanent injunctions, and $500,000 in damages for injury to his reputation and emotional distress from defendant Fred Rice.

 Defendants offer up a virtual laundry list of reasons why the complaint should be dismissed. They contend that the Constitution is not implicated in any way by the Police Board procedures: that the suspensions raise no due process question since the Constitution protects only the employment relationship of a public employee, not his interest in wages and benefits, and the police officers will receive a full hearing before the employment relationship is terminated; that the filing of charges infringes no liberty interest since suspensions are not stigmatizing and are not circulated to the general public; that in any case, if the Police Board fails to uphold the charges, the officer has a state law action for backpay, so no officer is wrongfully deprived; that even if there is a deprivation, the Board's steps clearly comply with the process which is due a public employee; that the Department is not asking the officers to give up their rights against self-incrimination when it orders them to cooperate with an internal investigation since use immunity implicitly attaches; and that the suspensions involve neither unconstitutionally vague standards nor a denial of equal protection. Defendants further oppose any preliminary injunction, asserting that plaintiffs are not suffering irreparable harm, and have an adequate remedy at law in the backpay action.[3]

---

3. Defendants also argue that each defendant should be dismissed: Mayor Washington because his own actions are not involved; Superintendent Rice because he has immunity; and the City of Chicago pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because there is no nexus between the suspensions initiated by Rice or the procedures of the Board and any custom or policy of the City. They then argue that the remaining de-

Although the parties have submitted some affidavits and documents, neither party has asked for summary judgment. Further, this court thinks any effort toward it on this record would be premature. We therefore will disregard those materials for purposes of the motion to dismiss and will focus on the legal issues raised by the pleadings. Since a narrowing of the issues will be helpful to our consideration of whether injunctive relief can or should be granted, we turn first to the motion to dismiss and postpone discussion of the motions for preliminary injunctions to section V. Since the due process theories present the most complexities, the remainder of this section as well as sections II and III are devoted to them. Analysis of the other constitutional theories appears in section IV.

## B. Procedural Due Process Analysis

 The class action plaintiffs complain that the superintendent's and Police Board's procedures deprive them of property and liberty without due process of law, and so infringe their rights under the Fourteenth Amendment. That claim must be characterized as a claim under procedural rather than substantive due process. The Fourteenth Amendment imposes on the state a "duty to provide fair procedures [which give] the citizen the opportunity to try to prevent the deprivation from happening.... In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law* —without adequate procedures." *Daniels v. Williams,* 474 U.S. ——, —— - ——, 106 S.Ct. 662, 678–679, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring) (emphasis in original). *See also Toney-El v. Franzen,* 777 F.2d 1224, 1227 (7th Cir. 1985). The defendants do not dispute that they were acting under color of state law in establishing the procedures and making the suspensions. The plaintiffs' challenge is not to the propriety of the suspensions as such, nor the power of the superintendent to suspend as such, nor the right of the Board to hear and rule on suspensions as such. Rather, they claim that the existing procedures do not give officers enough of an opportunity to try to prevent long-term suspensions from happening.

 Analysis of a procedural due process claim requires a three-stage inquiry, as the Supreme Court has recently made clear. *See Davidson v. Cannon,* 474 U.S. ——, ——, 106 S.Ct. 668, 673, 88 L.Ed.2d 677 (1986) (Blackmun, J., dissenting) (preferring former two-stage analysis). This court must first determine whether the in-

---

fendants, the Police Department and the Police Board, are not suable entities.

We can only reduce the defendants by one. Neither complaint makes any allegation against Mayor Washington personally. His presence as a defendant is not necessary since an injunction against the City and its agents would run against him. *See Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). He is dismissed as a defendant. However, the immunity Superintendent Rice would enjoy is only a qualified immunity from damages. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Immunity is therefore relevant only to plaintiff Green's damage claim, not to injunctive relief. Rice remains as a defendant. Further, the superintendent and the Police Board function as municipal officers with authority to establish official policy, so their acts are municipal policy for which the City may be held liable. *See, e.g., Pembaur v. City of Cincinnati,* 475 U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (liability imposed for single act of county prosecutor). Indeed, suspensions by the official authorized by law to suspend, and procedures by the Board authorized to establish procedures, are virtual textbook examples of "custom or policy" for *Monell* purposes. The City will remain in the suit. We therefore need not determine whether the Police Board and the Police Department are separate suable entities.

Defendants further maintain that any failure to comply with the Illinois statute is a question of state law over which this court has no jurisdiction. But defendants seem not to have heard of pendent jurisdiction. As long as plaintiffs' complaints raise a colorable federal question, this court has pendent jurisdiction over a state law claim sharing a common nucleus of operative fact with it. *See, e.g., Hess v. St. Joseph Police Pension Fund,* 788 F.2d 1344 (8th Cir. 1986) (police officers with due process claim may also seek refund of pension plan contributions on ground of Missouri statute). If the officers have constitutional claims, this court may determine if the suspension procedure also violates the Illinois statute.

terests of which the plaintiffs were allegedly deprived "are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'." *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). If they are, then we must ask whether the state's conduct amounted to a deprivation in the constitutional sense of that word. *Daniels*, 474 U.S. at ———, 106 S.Ct. at 664–665. If the plaintiffs had protected interests, and the state deprived them of those interests, then the plaintiffs had a constitutional right to fair procedure accompanying the deprivation. The inquiry therefore then turns to the question of what process was due in the particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Section II will determine whether plaintiffs state claims for deprivation of protected interests; section III will explore the issue of what process was due them.

## II. Deprivation of Protected Interests

### A. Do Officers Have Protected Property or Liberty Interests?

#### 1. Property Interest in Employment

██ Plaintiffs claim that the suspensions deprived them of a property interest. Defendants do not appear to dispute that Chicago police officers who have passed their probationary period have a property interest in their employment which is protected under the Fourteenth Amendment. One looks to sources outside the Constitution, *e.g.*, state law, to determine whether a state employee has a protected interest in his job. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Ill.Rev. Stat. ch. 24, ¶ 10–1–18.1 provides in pertinent part:

> In any municipality of more than 500,000 population, no officer or employee of the police department in the classified civil service of the municipality whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity

to be heard in his own defense by the police board.... Upon the filing of charges for which removal or discharge, or suspension of more than 30 days is recommended a hearing before the police board shall be held.... Nothing in this section limits the power of the superintendent to suspend the subordinate for a reasonable period, not exceeding 30 days.

Since an officer cannot be discharged or put on long-term suspension except for cause, he has a protected property interest in continued employment. *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir.), *cert. denied*, 431 U.S. 915, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977). *Cf. Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Olshock v. Village of Skokie*, 541 F.2d 1254, 1258 (7th Cir.1976) (finding property interest for policemen created by similar Illinois statute for smaller towns); *Muscare v. Quinn*, 520 F.2d 1212, 1215 (7th Cir.1975), *cert. dismissed* 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976) (finding property interest for Chicago firemen). Thus if the state's conduct amounts to a deprivation of that interest, they have due process rights.

#### 2. Liberty Interest in Opportunity to Pursue Occupation

██ Plaintiffs also argue that the filing of charges has defamed them in a way which injures their ability to pursue their chosen occupation, thus depriving them of a liberty interest. The Supreme Court has expressly held that an individual's interest in his reputation is neither a property interest nor a liberty interest entitled to protection under the due process clause. Thus defamation by the state, standing alone, is not the kind of state action which triggers due process protections. *Paul v. Davis*, 424 U.S. 693, 711–712, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976). *See also Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir. 1978).

██ The inquiry, however, does not end there. Defamation by persons acting under color of state law, like any other

state action, could have the consequence of depriving an individual of a protected interest. *Bone v. City of Lafayette*, 763 F.2d 295, 298 (7th Cir.1985). If state action distinctly extinguishes, alters or impairs an individual's ability to take advantage of a right, status or interest previously recognized and protected by law, that action invokes the constitutional protections of fair procedure. *Paul*, 424 U.S. at 693, 96 S.Ct. at 1157. It follows that if defamation by the state so affects an individual's ability to take advantage of a protected property or liberty interest, he has due process rights—in this context, a right to an opportunity to try to prevent the deprivation by clearing his name. *See Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Mosrie v. Barry*, 718 F.2d 1151, 1160–1161 (D.C.Cir.1983).

 Such a result is particularly likely to occur in an employment context. If, for example, someone acting under color of state law defamed a tenured public employee, and the defamation led to the firing of that employee, then the defamation would have deprived the employee of a protected property interest, triggering his due process protections. *See, e.g., Bone*, 763 F.2d at 298; *Stachura v. Truszkowski*, 763 F.2d 211, 214–215 (6th Cir.1985).[4] More commonly, however, a defamation-based claim comes from non-tenured public employees. They cannot rely on a theory of deprivation of property since they have no protected property interest. However, the freedom "to engage in any of the common occupations of life" is among the liberties which the Fourteenth Amendment protects. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042 (1923). *See also Hampton v. Mow Sun Wong*, 426 U.S. 88, 102, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976). A government action cannot foreclose employment opportunities in an individual's chosen occupation absent due process. *Roth*, 408 U.S. at 574, 92 S.Ct. at 2707–2708; *Cafeteria & Restau-*

*rant Workers Local 473 v. McElroy*, 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961). So, such persons typically argue that the charges made when they were fired were so defamatory that their ability to pursue their chosen occupation has been impaired, depriving them of a liberty interest. *See, e.g., Stachura*, 763 F.2d at 215; *Larry*, 605 F.2d at 958.

 The liberty interest in pursuing an occupation is defined narrowly. Most obviously, it is not a right to be hired for or to keep a particular government job. *Roth*, 408 U.S. at 575, 92 S.Ct. at 2708; *Perry v. F.B.I.*, 759 F.2d 1271, 1276 (7th Cir.1985), *reh'g en banc* 781 F.2d 1294, 1300 (7th Cir.1986). For failure to be hired or loss of a job alone to be actionable, one's entitlement to the job must rise to the level of a protected property interest. *Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699. *See also Stana v. School District of Pittsburgh*, 775 F.2d 122, 126 (3d Cir.1985) (eligibility list created property interest in rank on the list). And, at least under ordinary circumstances, it is not a right to be promoted. *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir.1985), *cert. denied, Thoele v. City of Chicago*, 474 U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). *But see Click v. Board of Police Commissioners*, 609 F.Supp. 1199, 1205 (W.D.Mo.1985). Plaintiffs' allegations that the charges accompanying their suspensions will affect their chances for promotion thus fail to state a claim because they do not implicate a protected liberty interest.

 The liberty interest does, however, include the general freedom to take advantage of such opportunities as may arise in one's chosen occupation. A state cannot significantly impair that freedom without using fair procedure. *Bone*, 763 F.2d at 298; *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138 (7th Cir. 1984). If the state so defames an individu-

---

4. Since the filing of charges is a prerequisite to suspension of a police officer for over 30 days, plaintiffs here would seem, at least potentially, to have an alternative theory of recovery along these lines. If the charges are defamatory, the act of filing them arguably deprived the officers of their protected property interest in employment. However, plaintiffs did not plead such a theory so this court need not pursue it.

al that the consequence is a stigma which makes him virtually unemployable in his chosen profession, the effect can be an impairment of that liberty interest. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. *See also Stachura*, 763 F.2d at 215; *Perry*, 759 F.2d at 1279; *Lawson*, 725 F.2d at 1139; *Larry*, 605 F.2d at 959. The officers here allege that the circumstances of their suspensions not only cost them their Chicago jobs for the period of the suspension, but also make them unemployable as policemen anywhere else during that time. These allegations implicate a constitutionally protected liberty interest. If defendants' acts actually deprived them of the interest, they are entitled to due process.

## B. Do Suspensions Accompanied by Charges Deprive Officers of Those Interests?

The City's first line of defense against the due process claims amounts to an argument that its conduct has not deprived the officers of either their property or liberty interests in the constitutional sense of the word "deprived." For example, only deliberate state actions are deprivations in the constitutional sense. *Daniels*, 474 U.S. at ——, 106 S.Ct. at 665. The City does not attempt to argue that the suspensions and filing of charges were not deliberate, and indeed it could not, since the acts came pursuant to established procedure. But it does contend that its conduct does not rise to the level of a deprivation. As to the property interests, the City takes the position that a suspension without pay is not a deprivation of the interest. The protected interest, it argues, is only the employment relationship, not the wages and fringe benefits which ordinarily accompany it. It follows, then, says the City, that an officer is not deprived of that interest until he is formally terminated, and he is formally terminated only after a full hearing. As to the liberty interests, the City argues that there has been no deprivation because there has been no defamation.

### 1. The Suspensions Deprived the Officers of Property

The argument that a suspension from employment is not a deprivation of the property interest in employment cannot be squared with applicable law. The Supreme Court has described the kind of property interest which the Fourteenth Amendment protects expressly as an interest which secures benefits and supports a claim of entitlement to those benefits. *Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699; *Roth*, 408 U.S. at 576–577, 92 S.Ct. at 2708–2709. The court has also consistently characterized the essential feature of the entitlement as the right to continued benefits, and any interruption in the flow of benefits as a deprivation of the interest. *See Atkins v. Parker*, 472 U.S. 115, —— and n. 31, 105 S.Ct. 2520, 2529 and n. 31, 86 L.Ed.2d 81 (1985); *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 786–787, 100 S.Ct. 2467, 2475–2476, 65 L.Ed.2d 506 (1980); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 20, 98 S.Ct. 1554, 1566, 56 L.Ed.2d 30 (1978); *Goldberg v. Kelly*, 397 U.S. 254, 266, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970). Thus, for example, when a New York City civil servant lost her title of chief investigator and was relieved of her supervisory duties but continued to receive the same salary and fringe benefits, there was no deprivation of her property interest in employment. The deprivation came roughly ten months later when the city stopped paying her. *Morciglio v. New York City Fire Department*, 628 F.Supp. 134, 135–136 (E.D.N.Y.1986).

Suspending officers without pay therefore deprives them of their property interest in the constitutional sense of the term. Indeed, a suspension need not be long-term or indefinite, as the suspensions here are, to trigger the right to fair procedure. A deprivation of constitutional dimensions occurs when the state stops the flow of benefits associated with a protected interest for any appreciable length of time. *Memphis Light*, 436 U.S. at 20, 98 S.Ct. at 1566; *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). The

duration of a suspension, since it directly relates to the severity of the deprivation, may be a factor to be weighed when the analysis moves to the third stage of determining what process is due. But the fact that benefits have merely been suspended briefly, rather than terminated, has never kept the state's action from being characterized as a deprivation. *See Goss,* 419 U.S. at 576, 584, 95 S.Ct. at 741 (student suspended for ten days from public school); *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (horse trainer's license suspended for 15 days); *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (90–day suspension of driver's license).[5] When, as here, a police officer has a property interest in his employment thanks to state law, any suspension without pay is a deprivation. *Confederation of Police,* 547 F.2d at 376 (suspension as well as discharge implicates due process). *See also Bailey v. Kirk,* 777 F.2d 567, 574–575 (10th Cir.1985) (chief of police suspended for four days); *Muscare,* 520 F.2d at 1215 (Chicago fireman suspended for 29 days); *Click,* 609 F.Supp at 1204 (police officer suspended for three days); *Hopkins v. Mayor & Council of City of Wilmington,* 600 F.Supp. 542, 547 (D.Del. 1984), *further proceeding* 615 F.Supp. 1455 (D.Del.1985) (officer suspended for 25 days before hearing). Plaintiffs were deprived of property, and so had a right to fair procedure.

### 2. The Charges May Have Deprived the Officers of Liberty

The City also argues that the filing of charges which accompanied the suspensions did not deprive the officers of their liberty interest in pursuing their occupations because no defamation occurred. The charges involved no stigma, it contends,

and, further, the charges were not published.

▮ Whether the officers actually suffered a deprivation through foreclosure of job opportunities as policemen depends ultimately on facts which of course we cannot determine on a motion to dismiss. The question now is rather whether they have reasonably stated a claim for such a deprivation. The case law in this area sets out requirements for such a claim. First, obviously, if the injury rests on defamation, the state action must be defamatory. At a minimum, then, the charges must be false, *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977), and must have been communicated to someone, *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Secondly, if the alleged injury is to the individual's liberty interest in pursuit of his occupation, then the defamation must come in the context of an unfavorable employment decision, *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); must carry the kind of stigma which could substantially curtail the individual's employment possibilities, *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985); and must have been communicated, or have the potential for being communicated, to possible employers. *Perry,* 759 F.2d at 1279; *Larry,* 605 F.2d at 958.

▮ Plaintiffs' complaints meet those requirements. They allege that the charges are false, as required by *Codd,* 429 U.S. at 627, 97 S.Ct. at 884.[6] The charges accompanied an unfavorable employment decision, namely their suspension pending a hearing on discharge. While it is true that the usual case involves a discharge, in fact the Supreme Court has commented that the

---

**5.** *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), on which the City relies, is not to the contrary. The court's holding that the suspended police officer in that case had no constitutional claim rested not on the fact that he had been suspended, but rather on the trial court's holding that the law of his state made him an at-will employee and therefore gave him

no protected property interest in his job. 426 U.S. at 345–346, 96 S.Ct. at 2077–2078.

**6.** Plaintiffs Vivirito and Filas expressly allege that the charges are false. Plaintiff Green says that he "has always maintained his innocence" of the charges, which this court takes to mean the same thing. Plaintiffs D'Acquisto and Deseno are not pursuing a liberty interest claim.

defamation need not cause a discharge for the individual to state a claim. *Owen v. City of Independence,* 445 U.S. 622, 633–634 n. 13, 100 S.Ct. 1398, 1406–1407 n. 13, 63 L.Ed.2d 673 (1980). A severe demotion will suffice, *Lawson,* 725 F.2d at 1139, or some other action which would "raise the likelihood that the defamation would be viewed by prospective employers as being something sufficiently serious as to affect his employability." *Bone,* 763 F.2d at 298 n. 1. We think that an emergency suspension with the threat of discharge pending raises a sufficient degree of seriousness.

▮ Defendants maintain that the charges do not carry a sufficiently defamatory stigma since the officers (or at least Vivirito and Filas) are formally charged only with infraction of departmental rules. However, the events at the core of each officer's dispute with the Department (including Vivirito and Filas) involve allegations of bribery. Dishonesty is a charge which nearly always carries a stigma that affects employability. *See Perry,* 781 F.2d at 1302, 759 F.2d at 1279; *Munson,* 754 F.2d at 693. This court has no difficulty believing that a bribe-taking charge could substantially curtail job opportunities for a policeman.

▮ Finally, defendants argue that there can be no injury because the charges have not been made public. Widespread publicity is one of the ways a defamatory charge can deprive an individual of his liberty to pursue his occupation, *see Owen,* 445 U.S. at 633–634 n. 13, 100 S.Ct. at 1406–1407 n. 13, and *Bishop,* 426. U.S. at 348, 96 S.Ct. at 2079, but it is not the only way. Several courts have held that placing the information in files to which other employers might have access at least creates a fact question on the likelihood of impact on employment opportunities. *See Perry,* 759 F.2d at 1278; *Burris v. Willis Independent School District,* 713 F.2d 1087, 1092 (5th Cir.1983); *Velger v. Cawley,* 525 F.2d 334, 336 (2d Cir.1975), *rev'd on other grounds sub nom. Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 692 (1977); *Click,* 609 F.Supp. at 1205; *Doe v.*

*United States Civil Service Commission,* 483 F.Supp. 539, 570–571 (S.D.N.Y.1980). Plaintiffs allege that the reasons for a suspension go into their departmental personnel files and indeed remain there for five years regardless of the outcome of their hearings. They further allege that other law enforcement agencies have access to these files.

▮ Another example of injury without widespread publicity may appear in the case of Officer McGrath. The liberty interest encompasses not just one occupation per person, but the freedom "to engage in *any* of the common occupations of life." *Meyer,* 262 U.S. at 399, 43 S.Ct. at 626 (emphasis added). If the allegations are true, information about McGrath's suspension has reached the Committee on Character and Fitness and so is keeping him from joining the Illinois bar. Defamation by state action thus could be doubly affecting his liberty interest in occupation, not only preventing him from pursuing his current occupation of policeman but also blocking his entry into a new profession for which he is otherwise qualified. Plaintiffs have stated a claim for deprivation of liberty sufficient to withstand a motion to dismiss.

### III. What Process Was Due The Officers?

▮ Since the officers at least state claims for deprivation of protected interests, our analysis now turns to what process was due them. The analysis is the same whether a property or liberty interest is implicated, since the same procedural protections apply to both kinds of interests. *Wolff v. McDonnell,* 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975–2976, 41 L.Ed.2d 935 (1974); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. ——, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

▮ Whether existing procedures provide due process depends on both the procedures and the particular situation. *Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600. The court must balance at least

three factors: the importance of the private interest at stake, the strength of the government's interest, and the quality of the existing procedures in light of the relative strength of the interests. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542–543, 546, 105 S.Ct. 1487, 1494, 1496, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 334–335, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976). In testing the quality of the existing procedures the court considers: (1) how likely it is that they will prevent an erroneous deprivation, (2) whether additional or other procedures would be more likely to prevent error, (3) the burden on the government if more procedural protections were added, and (4) the extent to which procedures following the deprivation will not only correct error but function to make an erroneously deprived party whole again. *Loudermill,* 470 U.S. at ——–——, 105 S.Ct. at 1494–1496; *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903; *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610, 617–618, 94 S.Ct. 1895, 1901, 1905, 40 L.Ed.2d 406 (1974).

## A. Some Kind of a Hearing

■■■ One essential principle of due process is that an individual facing a deprivation be given "some kind of a hearing." *Loudermill,* 470 U.S. at ——, 105 S.Ct. at 1493. The chance to be heard, to present one's own side of the story, is a fundamental requirement of any fair procedural system. *Id.,* 470 U.S. at ——, 105 S.Ct. at 1495.

■■■ The Chicago Police Board procedures, of course, do not altogether lack a hearing for the officers. But any assessment of the quality of the procedures must consider not only the fact of their existence but also their timing. The point of the procedural protection of a hearing is, in the words of Justice Stevens worth quoting again here, to provide the individual with "the opportunity to try to prevent the deprivation from happening." *Daniels,* 474 U.S. at ——, 106 S.Ct. at 678 (Stevens, J., concurring). Obviously the most effective time for such an opportunity is before the deprivation happens. *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). Thus our evaluation of the quality of the procedures will turn not only on what kind of chance to be heard the procedures include but also whether they guarantee that any deprivation will be accompanied by a timely chance to be heard.

## 1. Requirement of a Pre-deprivation or Prompt Post-deprivation Hearing

■■■ Any analysis of the timing of a hearing begins with the presumption that the hearing should be offered before the state has reached its decision on whether or not to deprive the individual of his interest. *See, e.g., Loudermill,* 470 U.S. at ——, 105 S.Ct. at 1493; *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786–787, 28 L.Ed.2d 113 (1971); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950). That expectation, however, is only a presumption, not an inflexible rule. *Dixon v. Love,* 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977); *Hatteras v. Southwestern Bell Telephone Co.,* 774 F.2d 1341 (5th Cir.1985). *Cf. Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600. The quality of procedures is judged in the light of the strength of the private and governmental interests at stake. If the individual's interest is significantly weaker than the government's, either from its own lack of weight or because the government's interest in quick action is particularly strong, a hearing which comes only after the deprivation has occurred is constitutionally adequate. *See Goss,* 419 U.S. at 582, 95 S.Ct. at 740 (school may suspend dangerous or disruptive student without prior hearing); *W.T. Grant,* 416 U.S. at 618–619, 94 S.Ct. at 1905–1906 (due process satisfied for defaulting debtor by post-deprivation hearing); *Fuentes,* 407 U.S. at 90–92, 92 S.Ct. at 1999–2000; *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (post-deprivation procedures for tax disputes justified by government need for revenue). For example, in *Mackey,* the

state law provided for suspension of a driver's license prior to any hearing when the driver had refused to take a breath analysis test after arrest for driving under the influence. The Supreme Court held that the procedure was adequate in light of the government's strong interest in providing safe public highways. 443 U.S. at 18, 99 S.Ct. at 2621. *See also Dixon*, 431 U.S. at 113–115, 97 S.Ct. at 1728–1729.

■ In the case at bar, the government's interest in ridding itself of ineffective or untrustworthy public employees is very strong. *Loudermill*, 470 U.S. at 543, 105 S.Ct. at 1494. However, the private interest also carries great weight. A suspension deprives the suspended officer of the means of making a living. An interest in the means of livelihood is a very strong interest. *Id.* The Supreme Court balanced those interests in *Loudermill* and concluded that the government interest did not so outweigh the employee's interest that the government could dispense with a pre-deprivation hearing. The due process clause obligated the government to give the public employee plaintiffs there notice of the reasons why it intended to fire them and an opportunity to present their side of the matter before it decided to deprive them of their jobs. 470 U.S. at 543–546, 105 S.Ct. at 1494–1495. *See also Muscare*, 520 F.2d at 1216 (Chicago fireman charged with dress code violation had a right to a pre-suspension hearing).[7] Here the officers allege that they had no opportunity to be heard whatsoever before they were suspended.

■ The analysis, however, does not end there. Even the individual's interest in his livelihood is not so great that it cannot be overridden by a particularly strong government need for quick action. In *Barry*, the state's interest in preserving the integrity of horseracing justified suspending a trainer's license on a showing of probable cause that his horse had been drugged, without first giving him a chance to be heard. 443 U.S. at 65, 99 S.Ct. at 2649. We do not read *Loudermill* as establishing a blanket rule that every public employee has a right to a pre-deprivation hearing in all circumstances. *See Click*, 609 F.Supp. at 1206. Here, the individuals concerned are not just public employees, but police officers. The government interest in effective law enforcement includes at least as much need for immediacy as the interest in highway safety or the integrity of horseracing. *Hughes v. Whitmer*, 714 F.2d 1407, 1419 (8th Cir.1983), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Click*, 609 F.Supp. at 1206; *Hopkins*, 600 F.Supp. at 547–548. The absence of a pre-suspension hearing is not necessarily fatal to the Police Board procedures. *Cf. Muscare*, 520 F.2d at 1216 (recognizing emergency exceptions to pre-suspension hearing for firemen).

■ The timing of the hearing for the officers nevertheless raises a serious constitutional question. The cases which have upheld deprivation before the opportunity to be heard on the ground of a powerful government interest in quick action have nevertheless emphasized that the states must offer a hearing promptly after the deprivation. Even when the state may justifiably act first and consider more deliberately later, so that the individual cannot stop the deprivation before it happens, he remains entitled to as much of an opportunity to minimize his injury as is practical in the situation. If the chance to be heard does not come promptly enough, the proce-

---

**7.** The precedential value of *Muscare* on this point is in some dispute. In 1980, a divided panel of the Seventh Circuit concluded that *Barry, supra*, had overruled it. *Ciechon v. City of Chicago*, 634 F.2d 1055, 1060 n. 4 (7th Cir.1980). *But see* 634 F.2d at 1062 n. 3 (Sprecher, J., dissenting). In fact, *Muscare's* holding that a pre-suspension hearing should be granted for ordinary rule infractions (the fireman plaintiff had been suspended for wearing a beard), while

post-suspension hearing was adequate only in emergencies, 520 F.2d at 1215–1216, seems reasonably consistent with the whole line of due process cases on timing, of which *Barry* is a part. *See* discussion *infra*. If anything, the Supreme Court's decision in *Loudermill* would seem to restore *Muscare's* vitality. *See Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1265 (7th Cir.1985).

dure is inadequate. *Barry*, 443 U.S. at 66, 99 S.Ct. at 2650; *Mackey*, 443 U.S. at 19, 99 S.Ct. at 2621; *Goss*, 419 U.S. at 582–583, 95 S.Ct. at 740–741; *W.T. Grant*, 416 U.S. at 611, 94 S.Ct. at 1902. Here the procedures do not guarantee that the officer's formal hearing before the Board will come within any set time after the deprivation, and the officers allege long delays between suspension and hearing.

If the first chance for a hearing comes only after the deprivation, "prompt" means exactly what one would think. A delay of even a few days has sometimes been enough for a constitutional violation. In *Mackey*, the driver had a right to a hearing before the registrar of motor vehicles immediately upon surrender of his license. 443 U.S. at 7, 12, 99 S.Ct. at 2615, 2618. *See also W.T. Grant*, 416 U.S. at 606, 610, 94 S.Ct. at 1899, 1901 (debtor could seek hearing immediately after writ of sequestration was served). In *Barry*, the court held the license suspension procedures unconstitutional because they could not guarantee a hearing within fifteen days of imposing the suspension. 443 U.S. at 55, 66, 99 S.Ct. at 2644, 2650. And the *Loudermill* court made its feelings about delay crystal clear when it mentioned that if the first stage hearing cannot come before the deprivation, the government should suspend the employee with pay. 470 U.S. at 544–545, 105 S.Ct. at 1495.

 Defendants, presumably putting their best foot forward, maintain that the average delay between suspension and review by the Police Board is four to five months. This court cannot characterize a hearing held several months after the deprivation as "prompt." *See Fusari v. Steinberg*, 419 U.S. 379, 388–389, 95 S.Ct. 533, 539–540, 42 L.Ed.2d 521 (1975) (average four-month delay in review of denials of unemployment benefits raised constitutional question); *Hopkins*, 600 F.Supp. at 549 (failure to give police officer a hearing until 25 days after suspending him violates due process). If that hearing is the officer's first chance to be heard, it comes too late.

## 2. A Later Evidentiary Hearing Does Not Excuse the Requirement

Defendants raise a battery of arguments against the above conclusion. Some rest on the quality of the Board's procedures. Defendants emphasize the trial-like procedures of the Board hearings. They also point out that if the Board determines that the officer has been wrongfully suspended, he will be fully restored to rank and salary, and may also be paid retroactively for the time he was suspended. *See, e.g., Hoban v. Rochford*, 73 Ill.App.3d 671, 29 Ill.Dec. 531, 392 N.E.2d 88 (1st Dist.1979). In essence, defendants maintain that the hearing an officer eventually gets, with its full panoply of procedures, is so likely to correct error and has so much capacity to provide a remedy to the wrongfully deprived officer that the delay is justified. In support, they cite *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496, where, they contend, the Supreme Court found that if a hearing is sufficiently thorough, even a nine-month delay is not necessarily unconstitutional.[8]

 That stance misreads *Loudermill's* holding. The thoroughness of the post-deprivation procedures and the availability of retroactive relief are indeed considerations in the evaluation of the overall quality of the procedures. But only the most powerful and compelling government needs—wartime emergencies, tax collection, misidentified drugs or contaminated food, bank failures—can allow that consideration to so tip the balance as to eliminate

---

**8.** Defendants also cite and rely heavily on *Ciechon v. City of Chicago*, 634 F.2d 1055 (7th Cir.1980). But *Ciechon* did not say that no first stage hearing was required for public employees. It said merely that no pre-suspension hearing was necessary for a fireman charged with a residency violation. It remanded for a determination whether post-suspension procedures were sufficiently prompt. 634 F.2d at 1059–1060. The continued validity of its holding, insofar as it does not require a pre-deprivation hearing for a "garden variety" summary deprivation, is doubtful after *Loudermill*, as the Seventh Circuit itself has implicitly acknowledged. *See Patkus*, 769 F.2d at 1265. *Cf.* n. 6 *supra*.

the pre-deprivation or prompt post-deprivation hearing entirely. *See Fuentes*, 407 U.S. at 92, 92 S.Ct. at 2000; *Commissioner v. Shapiro*, 424 U.S. 614, 630 n. 12, 96 S.Ct. 1062, 1072 n. 12, 47 L.Ed.2d 278 (1976). Rather, the existence of an eventual full evidentiary hearing and a retroactive remedy affects only how thorough the state must be at the pre-deprivation or prompt post-deprivation stage. Roughly, the more complete the process at the later stage, the more informal the earlier stage process can be. *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495; *Mathews*, 424 U.S. at 340, 345, 349, 96 S.Ct. at 905, 907–910; *Roth*, 408 U.S. at 570 n. 8, 92 S.Ct. at 2705–2706 n. 8. For example, plaintiffs here argue that their first stage hearing ought to be a full evidentiary hearing. This court does not agree. In light of how the balance has been struck in the past, the existence of a later hearing replete with procedural protection means that the first stage procedures can be far less thorough. *Mathews*, 424 U.S. at 345, 96 S.Ct. at 907–908; *Hopkins*, 600 F.Supp. at 547. *Cf. McClelland v. Massinga*, 786 F.2d 1205, 1213 (4th Cir. 1986). But the officers are entitled to some kind of pre-deprivation or prompt post-deprivation hearing. The principle does not extend to making the first hearing so informal that it disappears.

The Court's comments in *Loudermill*, to which defendants refer, exemplify that principle. They came in the context of a separate constitutional claim to the effect that even had plaintiff received a pre-deprivation hearing, the nine months between deprivation and the Civil Service Commission's review decision was an unconstitutional delay. 470 U.S. at ——, 105 S.Ct. at 1496. The court weighed the thoroughness of Commission review and its ability to offer backpay and did not agree. Assuming notice and opportunity to respond before the deprivation, said the court, a delay in the process of final review could be justified by the quality of that review. *Id.* Further, given the existence of a full evidentiary hearing within a reasonable time,

the first stage hearing need not be particularly elaborate. 470 U.S. at ——, 105 S.Ct. at 1495. But nowhere did the Court say that the availability of a full hearing and retroactive relief meant that the first stage hearing could simply be omitted. Indeed, the Court expressly held that a procedure without a first stage hearing was unconstitutional. A full evidentiary hearing later, even when it can award backpay, is no substitute for a chance to prevent the deprivation before or immediately after it occurs.

*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and its progeny are not to the contrary. In *Parratt*, the Supreme Court decided that when employees of a prison's hobby center lost a prisoner's mail order hobby kit, the state's tort claims procedure provided the prisoner all the process he was due. Since then it seems virtually every defendant in a due process clause case has raised adequacy of post-deprivation state law remedies as a defense. *See, e.g., Doty v. Carey*, 626 F.Supp. 359 (N.D.Ill.1986); *Begg v. Moffitt*, 555 F.Supp. 1344 (N.D.Ill.1983). The City here is no exception. Defendants attempt to argue from *Parratt* that since an officer has an action for backpay if wrongfully suspended, his state law remedies are adequate, and thus he has all the procedural protection he needs.

The argument is misplaced. As not only *Parratt* itself but also later Supreme Court cases have made clear, *Parratt* was a decision of narrow scope which rested in large part on a particular set of facts.[9] At a maximum, it reaches only random, unauthorized acts by state employees, not deprivations which come as a result of established state procedure. *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436, 102 S.Ct. 1148, 1157–1158, 71 L.Ed.2d 265 (1982); *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914.

---

**9.** *Parratt* has also been partly overruled. *Daniels*, 474 U.S. at ——, 106 S.Ct. at 665.

There are two reasons why. First, *Parratt* was expressly concerned with the kind of random, negligent loss which could not be predicted. No pre-deprivation procedure was practical or even possible on its facts. *Hudson*, 468 U.S. at 533, 104 S.Ct. at 3203; *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. Where pre-deprivation or prompt post-deprivation notice and hearing are possible, as they usually are when the system itself is doing the depriving, the procedure ought to come before or immediately after the deprivation. *Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1493; *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158. *See also Toney-El*, 777 F.2d at 1228; *Brown v. Trench*, 787 F.2d 167, 171 (3d Cir.1986); *Littlefield v. City of Afton*, 785 F.2d 596, 607 (8th Cir. 1986); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760 (9th Cir.1985).

■■■ Second, when the challenge is to the system itself, an independent state tort or contract action simply is not a constitutionally adequate remedy. The whole point of the procedural protection is to give the individual a chance to prevent the loss before it occurs or as soon thereafter as possible. A lawsuit cannot do that. It therefore is no remedy at all for the constitutional deficiency in the system, since it cannot take a plaintiff back in time and give him the chance he never got. *Logan*, 455 U.S. at 436–437, 102 S.Ct. at 1158–1159; *Patterson*, 761 F.2d at 893; *Parrett v. City of Connersville*, 737 F.2d 690, 697 (7th Cir.1984), *cert. dismissed* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). The police officers here complain precisely that the existing system suspends them without giving a chance to tell their side. The Illinois law action for backpay is irrelevant to that complaint.

### 3. A Hearing Must Include an Opportunity to be Heard

■■■ Defendants also try to characterize the review of each suspension within seven days by the hearing officer or a Board member as an adequate substitute for a pre-deprivation or a prompt post-deprivation hearing. It is not. Again, cases such as *Loudermill* and *Mathews* say merely that the promise of an eventual full hearing means that the procedural requirements of the first stage may be somewhat relaxed. They do not say that an essential element of that first stage—the opportunity to be heard—can simply be left out.

■■■ *Loudermill* calls for "an initial check against mistaken decisions." 470 U.S. at ——, 105 S.Ct. at 1495. Certainly the existence of the Department's internal review reduces the likelihood of an erroneous deprivation and its timing comes far closer to the constitutional standard of a prompt post-deprivation hearing. But one addition would make it far more likely to prevent error, namely the addition of an opportunity to be heard. "The opportunity to present reasons either in person or in writing why proposed action should not be taken is a fundamental due process requirement." *Id.*[10] In *Mathews*, a social security recipient facing termination of disability benefits had the opportunity to submit medical documentation and to communicate in writing. The Supreme Court held that in those circumstances, coupled with the opportunity for full review later, due process did not require a chance for an oral presentation at the first stage as well. 424 U.S. at 345, 96 S.Ct. at 907–908. In some circumstances the opportunity to make one's case only orally might be enough. *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir.1985); *Stermetz v. Harper*, 612 F.Supp. 423, 431 (W.D.Ark.1985). However, a purely *ex parte* internal review which gives the individual no chance to present his side of the story, neither in writing nor orally, cannot satisfy due process. *Loudermill*,

---

**10.** Again defendants rely on *Ciechon*, construing it alternatively as holding that an *ex parte* review of a Chicago fireman's suspension for failing to comply with the residency requirement, using documentary and investigatory evidence only, was an adequate first stage "hearing." 634 F.2d at 1059. We do not so read *Ciechon*, though that interpretation is possible on its facts. But in any case, the clear language of *Loudermill* on this point at a minimum makes the continued validity of any such holding highly doubtful. *See* n. 7, *supra.*

470 U.S. at 546, 105 S.Ct. at 1495; *Gleason v. Board of County Commissioners,* 620 F.Supp. 632, 635 (D.Colo.1985). *Cf. Southern Ohio Coal Co. v. Donovan,* 774 F.2d 693, 705 (6th Cir.1985) (employer's right to be heard when government reinstates employee). Defendants admit that the internal review provides no opportunity to be heard. Since the review is already in place, providing the opportunity would be a minimal burden on the government. The presence of the internal review cannot save the procedures.

Defendants also point out, however, that officers against whom charges have been filed are subject to investigation by members of the Police Department's Internal Affairs Division. Such investigation ordinarily includes an interrogation. Defendants suggest that the investigation provides the suspended officer with an opportunity to be heard.

■■■■ Defendants may have a point. Thanks to the thoroughness with which the Board's later hearing is conducted, the first stage hearing need not be particularly formal. *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. Depending on the factual circumstances, a meeting with an appropriate official, with a chance to respond orally, can satisfy first stage due process. *Kelly,* 764 F.2d at 1414. If the officer had adequate notice of the charge and the investigation offered him "a full and fair opportunity to tell his side of the story," an Internal Affairs investigation could meet the constitutional standard. *Click,* 609 F.Supp. at 1207. *See also McLean v. Rochford,* 404 F.Supp. 191, 197 (N.D.Ill.1975).

■■■■ However, defendants' point is not one which can carry the day for purposes of a motion to dismiss. To pass constitutional muster the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner," not in a manner which imposes unnecessary burdens on the person facing a deprivation. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187,

1191, 14 L.Ed.2d 62 (1965). *See also Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1265 (7th Cir.1985); *Schultz v. Baumgart,* 738 F.2d 231, 235 (7th Cir. 1984). Given the possibilities for intimidation which an atmosphere of interrogation offers, this court cannot assume as a matter of law that an interrogation equals a full and fair opportunity to present one's case. The question needs more factual development. Further, defendants have not shown how such an investigation fits into the review system, so that it could constitute a true check against a mistaken decision.[11] They do not claim that the Internal Affairs investigator has the power to reverse a suspension, nor do they indicate how his input would be channeled to anyone who did have that power. We cannot leap to the conclusion that an interrogation by an officer who has no reviewing authority is necessarily a meaningful opportunity to be heard. Plaintiffs still state a claim for denial of due process through the absence of a pre-deprivation or prompt post-deprivation hearing.

**4. Delay of the Evidentiary Hearing**

■■■■ Even if the Internal Affairs interrogation proved to be an adequate first stage hearing, however, that would not mean that the officers had no claim for denial of due process. The officers allege that the delay before the Police Board decides on the propriety of suspensions can last up to two years. If so, that delay could by itself constitute a separate due process violation.

■■■■ The ideal due process model is still one full evidentiary hearing before deprivation. *Goldberg,* 397 U.S. at 261, 90 S.Ct. at 1016–1017; *also* 267 n. 14, 90 S.Ct. at 1020 n. 14 ("Due process does not, of course, require two hearings.") As a practical matter, the balance of interests rarely dictates that a full evidentiary hearing is constitutionally required at that point; as

---

**11.** We note in this context that in *McLean* the interrogation preceded the suspension, which makes it more logical to characterize that interrogation as a chance to influence the decision. 404 F.Supp. at 196, 197.

we have just discussed, various considerations allow postponement of the full hearing when an adequate pre-deprivation or prompt post-deprivation hearing is used. *See, e.g., Loudermill,* 470 U.S. at 532, 105 S.Ct. at 1495; *Mathews,* 424 U.S. at 348, 96 S.Ct. at 909. But postponement of the full hearing is nevertheless deviation from the ideal model. Too much postponement for too long will be a violation regardless of the adequacy of the first stage hearing. The Supreme Court said as much in *Loudermill.* Although it rejected that plaintiff's claim based solely on delay of the full hearing, it did not say that such delay could never be a separate claim. To the contrary, it expressly recognized such a claim in theory, saying, "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." 470 U.S. at 547, 105 S.Ct. at 1496. *See also Mathews,* 424 U.S. at 342, 96 S.Ct. at 906; *Fusari,* 419 U.S. at 389, 95 S.Ct. at 539–540 (both discussing constitutional dimensions of delay between first and second stage hearings).

The Court also indicated that a claim based on delay of the evidentiary hearing would not be decided on the amount of time involved alone. The decision did not set out a bright line rule that nine months will always fall safely within due process. *Cf. Stermetz,* 612 F.Supp. at 431. The same balancing of factors that applies to all other aspects of due process applies here. The concern is whether the time between the first and second stage hearings was *"unreasonably* prolonged." *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496 (emphasis added). On the specific allegations before it, the Court held that nine months was not an unreasonable delay in light of the thoroughness of the hearing's procedures. *Id.* It follows that a delay of less than nine months could infringe due process if there was no reason for the delay and, conversely, that a longer delay than nine months could in some circumstances be constitutionally justifiable.

In the case at bar the allegations of both parties focus almost exclusively on the amount of time between suspension and Police Board review, and not on the reasons for delay. Defendants maintain that they do not deny the officers due process because the average delay is four to five months, far less than the nine months in *Loudermill.* The assertion misses the mark, because four or five months could be too long if there were no procedural justification for the delay. On the face of things we are inclined to think it is not, since the Board review includes trial-like protections for the parties such as representation, discovery and cross examination of witnesses. Preparing a good case takes time. However, plaintiffs allege that the delays come from the Department's request for continuances which are routinely granted without determining the need for them. Plaintiffs point to cases which have dangled unresolved for up to two years. Two years does strike this court as too long, although it might not be if, for example, the delay was solely for the benefit of the officer involved. The issue needs factual development. This court needs to know not just how long but also why. Until it does, plaintiffs state a due process claim for delay of the evidentiary hearing.

**B. Illinois Law**

Defendants also attempt to save their procedures by arguing that they comply with Illinois law. Several Illinois appellate court decisions have held that Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1 does not mean what it appears to mean, *i.e.,* does not mean that an officer cannot be suspended without pay for more than 30 days without a hearing. Reasoning, apparently, that an officer who is reinstated with backpay to the 30th day after his suspension began has not actually been suspended over 30 days, while an officer whose suspension is eventually upheld has not been suspended without a hearing, these decisions hold that a suspended officer has no claim for his salary while awaiting his hearing. *See Hoban,* 73 Ill.App.3d at 679, 29 Ill.Dec. at 537, 392 N.E.2d at 94; *Crowell v. Bilandic,* 77 Ill. App.3d 162, 32 Ill.Dec. 642, 395 N.E.2d

1023 (1st Dist.1979), *rev'd on other grounds* 81 Ill.2d 422, 44 Ill.Dec. 110, 411 N.E.2d 16 (1980); *Cotter v. Conlisk*, 17 Ill.App.3d 346, 308 N.E.2d 1 (1st Dist.1974). Thus, defendants argue that a police officer's property interest does not extend to salary while on suspension. Therefore, an officer suspended without a hearing has received all the procedure to which his interest entitles him.

■ The Supreme Court, however, roundly rejected that line of argument in *Loudermill*. State law controls only the substance of property interests, not their procedure, and "property" is not defined by the procedures for its deprivation. 470 U.S. at 541, 105 S.Ct. at 1493. *See also Vitek v. Jones*, 445 U.S. 480, 490–491, 100 S.Ct. 1254, 1262–1263, 63 L.Ed.2d 552 (1980). "Indeed, any other conclusion would allow the state to destroy at will virtually any state-created property interest." *Logan*, 455 U.S. at 432, 102 S.Ct. at 1156. The question of delay before a hearing is granted, of the timing on the opportunity to be heard, is just as much a procedural question governed by constitutional standards as is the quality of the opportunity. *Barry*, 443 U.S. at 66, 99 S.Ct. at 2650; *Goss*, 419 U.S. at 583, 95 S.Ct. at 740–741; *Fusari*, 419 U.S. at 389, 95 S.Ct. at 539–540. *See also Bailey*, 777 F.2d at 574–575; *Patkus*, 769 F.2d at 1265. It cannot be avoided by an attempt to characterize it as part of the state law defining property. Whether or not the Police Board's procedures comply with Illinois law

is irrelevant to plaintiffs' constitutional complaint.[12]

■ However, this court also seriously questions whether the procedures comply with Illinois law. When a federal court exercises its pendent or diversity jurisdiction, sitting as a court of the forum state, its role is to apply the law that the Supreme Court of the state would apply. Thus it is bound only by the decisions of the state Supreme Court and by the direction that Supreme Court would take, not by the state appellate courts. *Barr Co. v. Safeco Insurance Co. of America*, 583 F.Supp. 248 (N.D.Ill.1984). In one of the Illinois Supreme Court's two opportunities to construe the statute in question here, it gave that statute a more literal interpretation than have the appellate courts. When a Chicago police officer was suspended for a "minimum of 30 days" without a hearing, the court held that the suspension was void because it violated the statute and ordered that the officer be paid for the entire period during which he was suspended. *Maxwell v. Conlisk*, 60 Ill.2d 243, 326 N.E.2d 377 (1975). That suggests that the Illinois Supreme Court would apply the same reasoning to void any suspension that ran for more than 30 days without granting the officer a hearing. In its other opportunity, *Kropel v. Conlisk*, 60 Ill.2d 17, 322 N.E.2d 793 (1975), the court held that a police officer suspended for less than 30 days had a right to have that suspension reviewed by the Police Board. In *dictum* it found that the statute paralleled Ill.Rev.Stat. ch. 24, ¶ 10–1–18, governing public employees gen-

---

**12.** Indeed, the provision in the Illinois statute allowing suspensions for up to 30 days without a hearing may be unconstitutional. In *Bailey*, city procedures provided for suspensions of up to 10 days without a hearing. The Tenth Circuit held that such a state law procedural provision was void under the principles of *Loudermill*, and that failure to provide a hearing for a four-day suspension was a deprivation without due process. *Bailey*, 777 F.2d at 575. The *Hopkins* court found 25 days without a hearing an unconstitutional delay. 600 F.Supp. at 549. Over a decade ago the Seventh Circuit found that due process required a pre-suspension or prompt post-suspension hearing for Chicago firemen even if they were merely suspended for

less than 30 days, thus implying, without squarely saying, that the Illinois statute for Chicago firemen, which did not guarantee such a hearing, was unconstitutional. *Muscare*, 520 F.2d at 1212. *But see Dixon*, 431 U.S. at 109–110, 97 S.Ct. at 1725–1726 (upholding driver's license suspension procedures although hearing could be delayed until over 20 days after suspension); *Mainelli v. United States*, 611 F.Supp. 606, 614 (D.R.I.1985) (hearing within 30 days after suspension adequate for indicted government contractors). However, the plaintiffs here have expressly declined to challenge the power of the Superintendent to suspend them for up to 30 days without a hearing. This court therefore does not reach the question.

erally, and concluded that both meant that a hearing must be offered before a suspension could be extended beyond 30 days. 60 Ill.2d at 21, 322 N.E.2d at 798. Judge Marshall of this district has also construed the statute to mean no suspension for more than 30 days until after a hearing. *McLean,* 404 F.Supp. at 196. *See also Muscare,* 520 F.2d at 1215–1216 (under Illinois law hearing should precede suspension for more than 30 days of Chicago fireman).

■■■ The usual principle of statutory construction, that the words of the statutory text should be given their ordinary meaning, suggests the same result. The statute says that "no officer … may be … suspended for more than 30 days except for cause upon written charges *and after* an opportunity to be heard in his own defense by the police board." (Emphasis added.) Paragraph 10–1–18.1 may well require that an officer receive a hearing on the propriety of his suspension before that suspension has exceeded 30 days duration. If he does not, and the delay is no fault of the officer, then it could also require that he should be paid during the delay. *Cf. Maxwell,* 60 Ill.2d at 245, 326 N.E.2d at 378. The Chicago Police Board procedures do not guarantee a hearing within 30 days and, therefore, rather than providing grounds for dismissal of this action, lend considerable support to certain of plaintiffs' claims.

## C. Vagueness

■■■ Plaintiff Green's due process claim differs from that of the class action plaintiffs. For his complaint about the process he thinks he was due and did not receive, Green alleges that the regulation under which he was suspended, authorizing suspensions "for the good of the Department," is unconstitutionally vague.[13] However, regulations which define standards for employee job security need not be drawn with the same precision as the criminal code. The question is rather whether an ordinary person using ordinary common sense would be fairly on notice from the regulation that the conduct with which he is charged could cost him his job. In answering it the court takes into account what an ordinary person would know about the employer's needs and the way the employer has previously enforced the regulation. *Arnett v. Kennedy,* 416 U.S. 134, 159–160, 164, 177, 94 S.Ct. 1633, 1646–1647, 1649, 1655 (1974) ("any action which might

---

**13.** While the last memorandum plaintiff Green filed makes an argument based on his right to a hearing, this court cannot amend his complaint *sua sponte* to consider it. His complaint contains no language which can be construed as resting his claim on the absence of a hearing. Indeed, in his response to defendants' motion to dismiss, filed March 1, 1985, Green expressly disavowed that his claim was grounded on his right to a hearing (at p. 7). Rather, he there made clear that he complained of what he considered an arbitrary and capricious suspension. While he did allege a deprivation of a liberty interest without due process, what was lacking in the process, as he saw it, was not a hearing but grounds for the suspension, in that he considered rule IV–C unconstitutionally vague. He referred to theories relating to his right to a hearing only in his "Supplemental Motion for Immediate Mandatory Injunction" filed April 17, 1985, and in the accompanying memorandum.

At no time has Green moved to amend his complaint. This court has often been willing to consider a new legal theory on essentially the same facts already in the complaint, with or without a formal motion to amend. *See, e.g.,* *Prudential Insurance Co. v. Curt Bullock Builders, Inc.,* 626 F.Supp. 159, 162 n. 1 (N.D.Ill.1985). However, the instant situation goes beyond that of a new legal theory on the same facts. Green's complaint, as it stands, simply alleges no facts whatever about the presence or absence of a hearing. The facts in the complaint define the scope of the claim. *See, e.g., Original Ballet Russe v. Ballet Theatre, Inc.,* 133 F.2d 187, 189 (2d Cir.1943); *Collins v. Metro Goldwyn Pictures Corp.,* 106 F.2d 83, 87 (2d Cir.1939) (Clark, J., concurring). Green is not a prisoner appearing *pro se. Cf. Ross v. Mebane,* 536 F.2d 1199, 1202 (7th Cir.1976). The April 17 motion cannot be considered a supplemental pleading under Fed. R.Civ.P. 15(d), since it does not refer to facts which happened after the original complaint was filed. Further, a motion is not normally a pleading. *Bigelow v. RKO Radio Pictures, Inc.,* 16 F.R.D. 15, 17 (N.D.Ill.1954). Even the liberal construction policies of the Federal Rules have their limits. We think they have been reached when the facts needed for the theory are not in the complaint, there has been no motion to amend to include the needed facts, and at one point plaintiff expressly denied that he was pursuing the theory.

result in, or create the appearance of ... affecting adversely the confidence of the public in the integrity of O.E.O. and the Government" not unconstitutionally vague). *See also Parker v. Levy,* 417 U.S. 733, 752–757, 94 S.Ct. 2547, 2559–2562, 41 L.Ed.2d 439 (1974) (upholding "conduct unbecoming an officer and a gentleman" in code of military justice against vagueness challenge). Plaintiff Green is accused of taking bribes. This court thinks that ordinary knowledge and common sense would tell him that bribe-taking is conduct which would lead to a dismissal. There is no vagueness claim. *See Hopkins,* 600 F.Supp. at 553–554.

## D. Ex Parte Communication

Plaintiffs Vivirito and Filas also complain that communications between Superintendent Rice and the Police Board have denied them due process. According to their allegations, until recently the Police Board had consistently decided in favor of officers charged only with asserting their Fifth Amendment privilege against self-incrimination when ordered to give statements. Now, however, Superintendent Rice has allegedly communicated his disagreement with and dislike of those decisions to the Police Board. Plaintiffs fear that the pressure will cause the Police Board to change course. They are charged with the same offense. They argue that the Police Board's forthcoming decision on their charges will be unconstitutionally tainted by what they describe as *ex parte* communications from Rice.

However, as defendants point out, the officers misunderstand the legal standard for a constitutionally prohibited *ex parte* communication. An *ex parte* communication is a communication about a case which an adversary makes to the decisionmaker without notice to an affected party. It offends due process because without notice of it the party cannot respond to it. Obviously, all communications from an adversary to the person or body which sits in review are not prohibited. Indeed, in an adversary system such as one has in the

United States, an adversary must submit evidence and argument which supports his position to the decisionmaker. The prohibition against *ex parte* communications is rather a function of the general due process principle that an accused should have notice of the charges and the evidence against him so that he can effectively answer with his own evidence and arguments. *See Wolff,* 418 U.S. at 563, 94 S.Ct. at 2978; *Vitarelli v. Seaton,* 359 U.S. 535, 541, 79 S.Ct. 968, 973–974, 3 L.Ed.2d 1012 (1959); *Sullivan v. Department of the Navy,* 720 F.2d 1266, 1271–1272 (Fed.Cir.1983). In the employment context, that means notice of the reasons for the negative employment decision and access to the evidence in order to have a chance to respond. *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 103–105, 83 S.Ct. 1175, 1180–1181, 10 L.Ed.2d 224 (1963); *Everhart v. Jefferson Parish Hospital District No. 2,* 757 F.2d 1567, 1571 (5th Cir.1985). If the decisionmaker considers charges or evidence which have come to it *ex parte, i.e.,* without notice and an opportunity to respond, due process is violated. *Sullivan,* 720 F.2d at 1274; *Davis v. Alabama State University,* 613 F.Supp. 134, 138 (M.D.Ala.1985).

Plaintiffs do not complain of any remarks that come within the scope of an *ex parte* communication. As alleged, the remarks involve urging a particular interpretation of the scope of a police officer's Fifth Amendment privilege on the Police Board. Plaintiffs do not allege that the remarks involve either charges or evidence against them of which they are not aware or to which they lack access. In fact, the alleged remarks do not even go to plaintiffs' cases specifically, but rather to all Fifth Amendment cases in general. In short, Superintendent Rice has at most reargued a known position on a point of law to the decisionmaker in circumstances other than advocacy in a specific case. Plaintiffs have an opportunity to respond since they know that Fifth Amendment law is relevant to their case. Unilateral advocacy to the decisionmaker by an institutional adversary is improper. Superintendent Rice's comments to the Police Board, as-

suming they occurred, are not, however, *ex parte* communications as that term applies to the due process rights of the plaintiffs.

██ Plaintiffs may also be attempting to argue that the remarks represent undue influence on the Police Board. It is true that a person or body charged with making a decision should make an independent decision rather than automatically and uncritically accepting the view of one adversary. *Service v. Dulles*, 354 U.S. 363, 387–388, 77 S.Ct. 1152, 1164–1165, 1 L.Ed.2d 1403 (1957); *Robinson v. Palmer*, 631 F.Supp. 52, 55 (D.D.C.1986). If the decisionmaker is under so much pressure from an adversary that in effect the decisionmaker and the adversary are the same person, due process is violated. Such pressure is sometimes dealt with under the rubric of *ex parte* communications. *See Sullivan*, 720 F.2d at 1271; *Ryder v. United States*, 585 F.2d 482, 218 Ct.Cl. 289 (1978); *Camero v. United States*, 375 F.2d 777, 179 Ct.Cl. 520 (1967).

Again, however, the argument misunderstands the nature of due process. The few cases which apply this principle in the context of employment decision review involve extensive pressure on the merits of an individual case, with at least a suspicion of malice approaching personal vendetta. *Sullivan*, 720 F.2d at 1268–1270; *Ryder*, 585 F.2d at 484, 218 Ct.Cl. 289; *Camero*, 375 F.2d at 778–779, 179 Ct.Cl. 520. Here there is no allegation that Superintendent Rice even addressed the merits of these plaintiffs' individual cases, let alone attacked them personally. As the chief policymaker for the Department, he can and should advise the Board on a departmental legal position. While the allegations indicate that the timing of the expression of that position was inappropriate, the remarks do not implicate any constitutional principle.

### IV. Other Constitutional Claims

### A. Fifth Amendment Privilege Against Self-Incrimination

Plaintiffs Vivirito and Filas argue that if the Department orders an officer to give a statement before the appropriate prosecuting authority has declined prosecution in writing, the officer asserts a right to keep silent, and the Department then files internal charges against the officer for disobeying the order to speak, the officer's Fifth Amendment rights have been violated. They also allege that such an order breaches the Department's collective bargaining agreement with the Fraternal Order of Police.

██ Fifth Amendment law for public employees strikes a balance between the employee's privilege against self-incrimination and the state's interest in getting an accounting from someone who holds a public trust. *Lefkowitz v. Turley*, 414 U.S. 70, 81, 94 S.Ct. 316, 324, 38 L.Ed.2d 274 (1973). The balance rests on the fact that Fifth Amendment protections apply only to criminal proceedings. A public employer may not fire an employee solely because he is unwilling to abandon his privilege against self-incrimination. *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). It also may not squeeze statements out of the employee through a threat to fire him, and then use those statements in a criminal prosecution. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). However, the state has a choice between either demanding an accounting from him on job-related matters, in which case it cannot use the statements in a criminal prosecution, or prosecuting him, in which case it cannot demand an accounting. *Cunningham*, 431 U.S. at 809, 97 S.Ct. at 2137–2138. The employer may ask "questions specifically, directly, and narrowly relating to the performance of his official duties," and demand an answer on pain of dismissal even though the answers may tend to incriminate. *Gardner*, 392 U.S. at 278, 88 S.Ct. at 1916; *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 284, 88 S.Ct. 1917, 1919–1920, 20 L.Ed.2d 1089 (1968). Constitutionally, the employee may then be fired either on the basis of his

answers or for refusing to answer. What the employer cannot do is use any coerced answers in a criminal proceeding against the employee. *Confederation of Police v. Conlisk*, 489 F.2d 891, 894 (7th Cir.1973), *cert. denied*, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 426 F.2d 619, 627 (2d Cir.1970), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972).

 Obviously, then, a police officer facing possible criminal charges does not have an absolute right to keep silent. For example, at one point in this litigation some of these plaintiffs attempted to argue that the Fifth Amendment interlocks with the due process clause to give them sinecures. They asserted that even if they were given a first stage opportunity to be heard, the Fifth Amendment gave them a right to keep silent during it; meanwhile, the due process clause kept the Department from suspending them as long as they were silent, since they had not yet been heard. Plaintiffs seem now to have abandoned that argument, but just in case, this court offers its opinion that the Constitution does not force the state to eternally employ anyone accused of a criminal act who chooses to keep silent. *See Sanitation Men*, 426 F.2d at 626. Due process requires only an *opportunity* to be heard; if an individual chooses not to take advantage of that opportunity, due process has nevertheless been satisfied. *McLean*, 404 F.Supp. at 198; *Hank v. Codd*, 424 F.Supp. 1086, 1088 (S.D.N.Y.1975). Similarly, putting the individual to the choice between his opportunity to be heard and his privilege against self-incrimination is not an impermissible burden on his Fifth Amendment rights. *Diebold v. Civil Service Commission of St. Louis County*, 611 F.2d 697 (8th Cir. 1979); *Luman v. Tanzler*, 411 F.2d 164 (5th Cir.), *cert. denied*, 396 U.S. 929, 90 S.Ct. 264, 24 L.Ed.2d 227 (1969). In the words of the Second Circuit, "Public employees do not have an absolute right to refuse to account for their official actions and still keep their jobs." *Sanitation Men*, 426 F.2d at 627, *quoted with approval in Conlisk*, 489 F.2d at 894.

 The Constitution also does not require the former departmental practice of waiting for a written declination of prosecution before ordering the officer to speak. A public employee's rights require only use immunity, not transactional immunity. *Turley*, 414 U.S. at 78, 94 S.Ct. at 332–323; *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). However, the allegations in these plaintiffs' Fifth Amendment count nevertheless state a claim. Fairly read, plaintiffs are also asserting in that count that they need not answer possibly incriminating questions from their employer until they have an affirmative assurance of immunity. On that narrow question the circuits appear to be split, and the Seventh Circuit seems to be on plaintiffs' side.

The courts which have directly addressed the question have held that no affirmative grant of immunity from the prosecuting authority is necessary. *Erwin v. Price*, 778 F.2d 668, 670 (11th Cir.1985); *Gulden v. McCorkle*, 680 F.2d 1070, 1075 (5th Cir. 1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). These courts reason that the privilege against self-incrimination affords a form of use immunity which attaches automatically as a matter of law when a public employer compels incriminating statements. *See also Hester v. City of Milledgeville*, 777 F.2d 1492, 1496 (11th Cir.1985). The logic runs as follows: the Supreme Court has already held that the threat of being fired is sufficient to constitute compulsion of the statements. *Garrity*, 385 U.S. at 497, 87 S.Ct. at 618. As a matter of law, compelled statements cannot be used against their maker in a criminal proceeding. *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661; *Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609–1610, 12 L.Ed.2d 678 (1964). Therefore, as a matter of law the statements cannot be used regardless of whether immunity has expressly been granted. *Erwin*, 778 F.2d at 670; *Gulden*, 680 F.2d at 1075.

However persuasive that logic, in fact the Supreme Court's language in more than one opinion on employee statements speaks of an affirmative grant of use immunity. *See Cunningham*, 431 U.S. at 809, 97 S.Ct. at 2137–2138 ("Once proper use immunity is granted ..."); *Turley*, 414 U.S. at 78, 94 S.Ct. at 322–323 ("... may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers ..."), 85 ("... States must offer to the witness whatever immunity is required ..."). The language of Seventh Circuit opinions would also appear to require that employees first be affirmatively advised that they will have use immunity if they speak. In *Conlisk*, 489 F.2d at 894, the court said:

> A public employer may discharge an employee for refusal to answer where the employer *both* asks specific questions relating to the employee's official duties *and* advises the employee ... that answers he gives and fruits thereof cannot be used against him in criminal proceedings.

(Emphasis added.) In *United States v. Devitt*, 499 F.2d 135, 141 (7th Cir.1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), the court added:

> Nor may disciplinary action be taken against the witness for his refusal to testify, unless he is first advised that ... evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings.

As both the Fifth Circuit and Judge Marshall of this district read this language, the cases mean that the employee must have an affirmative assurance of immunity before the employer can demand answers. *Gulden*, 780 F.2d at 1075 (declining to follow *Conlisk* and *Devitt*); *McLean*, 404 F.Supp. at 198. They do not appear to specifically require a communication from the prosecutor. The employer, it would seem, can do the advising. But officers under interrogation are not expected to know the "ins" and "outs" of Fifth Amendment law, and they should not have to guess whether or not they have criminal immunity for their statements. *Cf. Benja-*

*min v. City of Montgomery*, 785 F.2d 959, 962 (11th Cir.1986).

Some dispute exists over exactly what plaintiffs here were told before they were ordered to give statements. Defendants contend that the interrogator advised them that the statements could not be used criminally against them. However, copies of the interrogation record, attached to and incorporated by reference into the complaint, indicate only a promise that "no criminal prosecution will be sought by the Department." That promise does not necessarily equal an assurance of immunity. This circuit requires, at a minimum, some sort of affirmative statement on immunity before the employer can take disciplinary action. Whether or not these plaintiffs got one is a question of fact which we cannot now answer. The count cannot be dismissed.

As to plaintiffs' right under their collective bargaining agreement, however, this court can take no action. Ordinarily questions of interpretation of a collective bargaining agreement are preempted by federal law. 29 U.S.C. § 185; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). However, preemption does not apply here since municipal governments, as arms of the state, are not employers under the Labor Management Relations Act and so are not covered by it. 29 U.S.C. § 152. The Illinois statute which permits collective bargaining by municipal employees, Ill.Rev. Stat. ch. 48, ¶ 1601 *et seq.*, also requires that any disputes involving an agreement should first go to arbitration. *Id.*, ¶¶ 1602, 1616. The matter is therefore not properly before us.

**B. Equal Protection**

Plaintiff Green asserts that not all officers who have been indicted have also been suspended, and therefore that his "arbitrary and capricious" suspension denies him equal protection of the laws. He does not, however, allege that he was not indicted or that the Department has no rational

basis for suspending policemen who are indicted. *Cf. Olshock*, 541 F.2d at 1260 (finding equal protection claim when reason for discharges lacked rational basis). Neither does he allege that persons of his race or sex or religion who are indicted are more frequently suspended than persons of another race or sex or religion.

■■■■ As long as a law or regulation is rationally based, the mere failure of those who administer it to treat all persons who have violated it with complete equality does not of itself infringe the constitutional principle of equal protection. The equal protection clause prohibits selective enforcement which is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). *See also United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (prosecutor's discretion presents no equal protection problem); *Harrington v. United States*, 673 F.2d 7, 9 (1st Cir. 1982) (applying *Batchelder* and *Oyler* to uphold termination of public employee despite his allegation that others with similar offenses were not fired). *Cf. Dandridge v. Williams*, 397 U.S. 471, 486–487, 90 S.Ct. 1153, 1162–1163, 25 L.Ed.2d 491 (1970) ("the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.") The legitimate objective of maintaining an effective police force may require the discretion to make individual judgments, and the equal protection clause is no barrier to legitimate exercise of such discretion. *See Busche v. Burkee*, 649 F.2d 509, 517 n. 16 (7th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Herzbrun v. Milwaukee County*, 504 F.2d 1189, 1196 (7th Cir. 1974); *Hoffman v. McNamara*, 630

F.Supp. 1257, 1261 (D.Conn.1986); *Hopkins*, 615 F.Supp. at 1463; *McLean*, 404 F.Supp. at 199. Green has no claim under the Equal Protection Clause.

## V. Questions of Available Relief

### A. Preliminary Injunction

■■■■ Having determined that some of the class action plaintiffs' theories survive a motion to dismiss, discussion now turns to whether they can obtain the preliminary injunction they seek.[14] Although the Seventh Circuit has recently explored various ways of articulating the process of balancing of factors which this court must undertake in deciding whether a preliminary injunction should issue, *see American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–594 (7th Cir. 1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 385–387 (7th Cir.1984), it is still permissible to phrase the threshold tests in traditional terms, namely that a plaintiff must show at the outset both a reasonable likelihood of success on the merits and an irreparable injury for which there is no adequate remedy at law. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435, 1441 (7th Cir. 1986).

■■■ The foregoing discussion shows that these suspended officers have a reasonable likelihood of success on the merits. The stumbling block is whether they are suffering irreparable injury, as that term is defined for preliminary injunctions. The Seventh Circuit has consistently held, in the context of employment disputes, that temporary loss of income, even when coupled with the likelihood of damage to the employee's professional reputation, is not irreparable injury unless the circumstances are quite unusual. *See Lasco v. Northern*,

---

**14.** As this court reads *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), we have the power to enjoin the City on the grounds of its violation of state as well as federal law. *Pennhurst* held that the Eleventh Amendment bars a federal court from ordering state officials to conform to state law. 465 U.S. at 106, 104 S.Ct.

at 911. However, Eleventh Amendment protection does not extend to municipal corporations and their agents. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–573, 50 L.Ed.2d 471 (1977). The Court's opinion in *Pennhurst* recognized the distinction. 465 U.S. at 123 n. 34, 104 S.Ct. at 920–921 n. 34.

733 F.2d 477, 481 (7th Cir.1984); *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* 684 F.2d 1346, 1349 (7th Cir.1982); *Ciechon v. City of Chicago,* 634 F.2d 1055, 1058 (7th Cir.1980). Loss of income is not irreparable as long as the plaintiff has an action for damages or backpay which could eventually restore the dollar amount lost. *Dos Santos,* 684 F.2d at 1349; *Ciechon,* 634 F.2d at 1058. Depletion of savings or problems in finding other employment are not enough. *Sampson v. Murray,* 415 U.S. 61, 90–92, 94 S.Ct. 937, 953–954, 39 L.Ed.2d 166 (1974); *Ciechon,* 634 F.2d at 1058. One circuit has found that the possible lapse of an employee's fringe benefits constitutes irreparable harm since it could cause a denial of adequate medical care. *United Steelworkers of America, AFL–CIO v. Fort Pitt Steel Casting Division,* 598 F.2d 1273, 1280 (3d Cir.1979). The Seventh Circuit, however, has squarely rejected this argument. *Lasco,* 733 F.2d at 481.

The question remains as to what might constitute unusual circumstances. Judge Shadur of this district believed that he had found them in *Truck Drivers Local 705 v. Almarc Manufacturing, Inc.,* 553 F.Supp. 1170 (N.D.Ill.1982), where the plaintiffs' difficulties in meeting their everyday needs resulted from their employer's refusal to comply with an arbitration award. One might argue that the loss of employment caused by a violation of constitutional rights is similarly unusual. Indeed, infringement of constitutional rights alone is often considered irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (plurality opinion); *Jessen v. Village of Lyndon Station,* 519 F.Supp. 1183, 1189 (W.D.Wis.1981).

To accept that argument, however, this court would have to ignore clear Seventh Circuit precedent. The plaintiffs in *Lasco* and *Ciechon* were both public employees who alleged that they had been unconstitutionally deprived of their jobs, and they were both denied a preliminary injunction. *Lasco* complained that he had been laid off because of his political affiliation. 733 F.2d at 478. *Ciechon* bears an even closer resemblance to the instant case, since the plaintiffs were Chicago firemen bringing a class action against a practice of suspensions without prior hearing. 634 F.2d at 1056. In both cases the court characterized the injury as loss of income which was not irreparable. Indeed, a recent Seventh Circuit opinion, albeit *in dicta,* summed up the law for a preliminary injunction that orders a public employee reinstated as requiring "a very strong showing of irreparable harm". *Shondel v. McDermott,* 775 F.2d 859, 867 (7th Cir.1985).

It is not entirely clear why this should be so. Perhaps it is simply because a preliminary injunction ordering reinstatement is in any context an extraordinary remedy. *EEOC v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir.1980). Perhaps it is because whatever weight the plaintiffs' case gains from the added constitutional issue is balanced in the public employment context by the fact that the employer is the government. To issue a preliminary injunction, a court must also consider the public interest, and should not assist the plaintiff at the cost of injuring the public. *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.,* 784 F.2d 1325, 1334 (7th Cir.1986). A governmental body has a strong claim on the public interest when acting to rid itself of a potentially ineffective, disloyal or dishonest employee. This consideration could acquire additional force when the court contemplating the injunction is federal, while the body to be enjoined is an arm of the state, as was true in both *Lasco* and *Ciechon,* and is true here. Some deference to the concerns of federalism has characterized other preliminary injunction decisions in this circuit. *See, e.g., Palmer v. City of Chicago,* 755 F.2d 560, 578 (7th Cir.1985). Whatever the rationale, this court finds that *Lasco* and *Ciechon* control the instant case.

The allegations about Officer McGrath do not change that conclusion. They do come much closer to stating irreparable injury. The Seventh Circuit has found irreparable injury in an employment context

where the dispute effectively prevented a plaintiff from pursuing an occupation for which he had trained. *Vogel v. American Society of Appraisers,* 744 F.2d 598, 599 (7th Cir.1984) (expulsion of gem appraiser from association of appraisers). *See also McLaughlin v. Massachusetts Maritime Academy,* 564 F.Supp. 809, 811 (D.Mass. 1983) (expulsion from military academy is irreparable injury). If the allegations are true, the departmental suspension stands between McGrath and entry into the legal profession. Even if in the end his becoming a lawyer is only delayed, it would be quite difficult to reduce that injury to a dollar amount in damages. *Cf. Vogel,* 744 F.2d at 599.

 Nevertheless, the relief requested for Officer McGrath is the same as for the other officers: restoration to active duty as a police officer, or at least to his police officer's pay and benefits. Thus even if delaying his entry into the legal profession constitutes irreparable injury, the relief requested has no nexus with that injury. Construing the allegations of injury to Officer McGrath in light of the relief sought, in fact plaintiffs do not see McGrath's injury as any different from that suffered by others. The injury they are concerned about is his loss of his paycheck, and we cannot order the department to pay him as a policeman just because it may be injuring him as a lawyer. Plaintiffs have framed all their allegations of irreparable injury in terms of the effects of their loss of income and fringe benefits. That is not irreparable injury in this circuit. Since the motion for a preliminary injunction fails if the plaintiff cannot show irreparable injury, *Ciechon,* 634 F.2d at 1057, we need not consider any other factors. The preliminary injunction cannot issue.

**B. Considerations for Damages and Backpay**

 Defendants have raised two final arguments addressing the relief plaintiffs can eventually receive. Defendant Rice contends that he is immune to the damage award plaintiff Green seeks. He is entitled to a determination of that question, if possible, before the litigation proceeds any further. *See Mitchell v. Forsyth,* 472 U.S. ——, ——, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). However, now that we have analyzed the claims we need not reach the question. Only plaintiff Green seeks damages from defendant Rice. Plaintiff Green's complaint, resting on vagueness and equal protection theories, does not state a claim.

As for other relief, defendants contend that the officers cannot win awards of backpay unless they are cleared of the departmental charges against them. The argument is based on *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–1054, 55 L.Ed.2d 252 (1978), which held that a deprivation of procedural due process, standing alone, is actionable only for nominal damages. If the City can show that the officers would have been suspended even if proper procedures had been used, it argues, then nominal damages is all they can collect. Further, the City argues that since a liberty interest is only an interest in future employment, as a matter of law it cannot support an award of backpay.

 While nominal damages are often the result in cases of this nature, the question is not quite that simple. What *Carey* held is that damages awarded under § 1983 should compensate persons for injuries caused by the particular deprivation of the particular constitutional right at issue. If a plaintiff's injury arises from the denial of procedural due process, it is compensable like any other injury. 435 U.S. at 254, 260, 98 S.Ct. at 1050. So, for example, when a procedural deficiency prevented a street vendor from selling T-shirts at an exhibition for which they were specifically prepared, she collected both her initial costs and her lost profits under § 1983. *Chalmers,* 762 F.2d at 760–761.

The gist of plaintiffs' due process claim is one of timing: they did not receive the procedure to which they were entitled at the time they were entitled to it. That distinguishes their claim from those in which a hearing was timely held, but was

flawed in some other way. In *Loudermill,* the Supreme Court, speaking of the importance of not depriving a public employee of his job until he has had a hearing, said, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." 470 U.S. at 544–545, 105 S.Ct. at 1495. Arguably, at least, that statement indicates that in the court's opinion an employee with a property interest is entitled to keep it until he receives a proper hearing.

On that reading even a rightfully suspended employee would appear to have a claim for some damages for the period between his procedurally improper suspension and his hearing. For example, in *Wheeler v. Mental Health and Mental Retardation Authority,* 752 F.2d 1063, 1070–1072 (5th Cir.), *cert. denied,* 474 U.S. ——, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985), the court found that the plaintiff would eventually have been discharged. However, it remanded for a determination of whether she could have been so quickly and summarily discharged if proper procedure had been followed. If not, the procedural due process violation could properly be seen as the cause of the discharge on that date and she had a claim for backpay from that date until the proper hearing. *See also Hopkins,* 615 F.Supp. at 1464–1465; *Smith v. City of Pittsburgh,* 585 F.Supp. 941, 948 (W.D.Pa.1984), *rev'd on other grounds* 764 F.2d 188 (3d Cir.1985). *But see, e.g., Patkus,* 769 F.2d at 1265 (finding only nominal damages). In addition, if *Maxwell v. Conlisk* means that a suspension in violation of the Illinois statute is void and an officer has a claim for his salary during a void suspension, then the officers may have independent state law actions for backpay.

■ The procedural delay may also implicate the officers' liberty interest in their occupation, regardless of the outcome of Board review. Contrary to defendants' assertion, a liberty interest claim will support either an award of backpay or damages which approximate backpay. *See Owen,* 445 U.S. at 632 n. 12, 100 S.Ct. at 1405–

1406 n. 12. The officers have not of course been defamed unless the charges are false, but defamation without a hearing is not the only way the state can injure the interest in occupation. The interest in pursuit of one's occupation is always present. Injury can begin as soon as the state with improper procedures starts burdening it and continues at least until the state offers a hearing. The failure to provide a hearing can also be a cause of emotional distress. *See Stachura,* 763 F.2d at 214–215.

Plaintiffs may well be able to show that while awaiting their evidentiary hearing they are not only unemployed but unemployable. Even if the charges are finally upheld, the delay in getting matters resolved could of itself have contributed to that unemployable status. The Seventh Circuit has held that even accusations which eventually prove true can be grounds for damages in a procedural due process claim when they are disseminated more widely than they would have been had proper procedure been followed. The procedural inadequacy then can cause both injury to the liberty interest and emotional distress. *Busche,* 649 F.2d at 519 and n. 13 (police officer). Here the officers might be able to show that they were far more unemployable waiting with clouds hanging over their heads than if the charges had been ruled on, even if the ruling was negative.

We of course take no position on what the outcome of the officers' hearings will be. We note only that the class action complaint states claims for deprivation of property and liberty interests without due process of law and for infringement of the officers' privilege against self-incrimination. While this court cannot grant the officers a preliminary injunction, they may go forward on their claims for declaratory judgment and permanent injunction, and regardless of the outcome of their hearings they may have claims for backpay or damages.

## CONCLUSION

Plaintiff Green's complaint is dismissed for failure to state a claim upon which

relief can be granted. Defendants' motion to dismiss the class action complaint is denied, but the following paragraphs of the second amended complaint are stricken: 41 and 69 through 71, alleging *ex parte* communications; 55 through 58 and 63, alleging breach of a collective bargaining agreement. Also, Mayor Washington is dismissed as a defendant. Plaintiffs' motions for preliminary injunctions are denied.